REVISED APRIL 4, 2008
IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 3, 2008

Charles R. Fulbruge III
Clerk

No. 07-10153

UNITED STATES OF AMERICA

Plaintiff-Appellant

v.

PEDRO GOMEZ-HERRERA

Defendant-Appellee

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:06-CR-239-ALL

Before JONES, Chief Judge, and DAVIS and GARZA, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Pedro Gomez-Herrera pleaded guilty to one count of illegal reentry following removal pursuant to 8 U.S.C. § 1326. In this appeal, he argues primarily that Kimbrough v. United States, 128 S.Ct. 558 (2007), requires that this court vacate his sentence and remand his case for resentencing in light of that decision. For the following reasons, we disagree and affirm.

I.

Pedro Gomez-Herrera pleaded guilty to one count of illegal reentry following removal. According to the presentence report (PSR), Gomez-Herrera was born in Mexico in 1952 but lived in Texas since the age of three months. He

married twice in the 1970s and had three children through these marriages and a fourth child he never met. His father and five siblings all reside in Texas. In 1988, Gomez-Herrera was convicted of murder in Dallas County Criminal District Court and was sentenced to 45 years in prison. He was released on parole in 2003 and deported.

The PSR set Gomez-Herrera's base offense level at eight. The PSR added 16 levels pursuant to U.S.S.G. § 2L1.2(b)(1)(A) because Gomez-Herrera was previously deported following a conviction for murder, a crime of violence. After a three-level reduction for acceptance of responsibility, Gomez-Herrera's total offense level was 21. With his criminal history category of III, Gomez-Herrera's Guidelines sentencing range was 46 to 57 months.

Gomez-Herrera filed a sentencing memorandum in which he argued, pursuant to various sentencing factors set forth in 18 U.S.C. § 3553(a), that a sentence of 30 months would be reasonable. Specifically, Gomez-Herrera contended that the seriousness of the offense was mitigated because he re-entered the United States to join his father who was undergoing surgery; that he was culturally assimilated because he had lived most of his life in Dallas, where he attended school, built a family and worked; that he was no longer a dangerous individual as evidenced by his steady work history and his completion of his GED and 13 credit hours of college during his incarceration; that an offense level of 24 gave too much weight to his prior conviction, as it is comparable to or greater than the offense level for many other serious offenses.

He further argued that the 16-level enhancement is an anomaly and was adopted without any study to determine whether it was necessary or desirable from a penal standpoint. He also contended that there is a disparity between those districts that employ "fast track programs" which provide lesser sentences to defendants who agree to quick guilty pleas and uncontested removals and other sentencing districts which have no such programs.

Gomez-Herrera's counsel repeated his arguments for a variance below the Guidelines or a downward departure at the sentencing hearing. The Government opposed a sentence outside the Guidelines range on the basis that his criminal history dated to 1985, culminating in his murder conviction in 1988; that his ties to the United States and lack of ties to Mexico made him more likely to return illegally; and that he was not truthful regarding his identity when he was discovered by immigration authorities.

The district court noted Gomez-Herrera's arguments for either a departure or variance and then stated that it was "persuaded on the basis of the arguments made both here today and in the sentencing memorandum that I should not depart downward from the Guideline range." The court found no factors warranting a sentence at either extreme of that range and imposed a sentence at the mid-point of 51 months. Gomez-Herrera appeals.

## II.

As his primary argument, Gomez-Herrera asserts that this court's precedent limiting the ability of district courts to impose a non-Guidelines sentence based on disagreement with a policy of the Sentencing Commission or Congress effectively returned the Guidelines to the same mandatory status that existed prior to Booker. He argues that this status prohibited the district court from considering his arguments for a lower sentence based on sentencing disparity created by the availability of early disposition or fast track programs in some sentencing jurisdictions but not others.[1] He contends that this

---

[1] This circuit has never held that a district court may not consider and give effect to defendant's argument for a reduced sentence on this basis. Rather our cases have only concluded that a district court is not required "to factor in, when sentencing a defendant, the sentencing disparity caused by early disposition programs" to prevent a sentence from being unreasonable. United States v. Aguirre-Villa, 460 F.3d 681, 683 (5th Cir. 2006). We also held in United States v. Marmolejos-Agramonte, 2007 WL 2438244 (5th Cir. Aug. 22, 2007)(unpublished) that a defendant's trial counsel does not provide ineffective assistance by failing to request a four-level departure pursuant to the fast track program under U.S.S.G. § 5K3.1 when the defendant was sentenced in a district without a fast track program.

It is not entirely clear from his briefs whether Gomez-Herrera makes the same argument that the district court was foreclosed from considering his argument for a lower

constitutes "Fanfan" error, which occurs when a court sentences a defendant under the formerly mandatory Guidelines scheme. See United States v. Walters, 418 F.3d 461, 463-64 (5th Cir. 2005).[2]

Between the time Gomez-Herrera was sentenced and this appeal, the Supreme Court decided two sentencing cases which affect Gomez-Herrera's argument - Rita v. United States, 127 S.Ct. 2456 (2007) and Kimbrough v. United States, 128 S.Ct. 558 (2007). In Rita v. United States, the Supreme Court held that appellate courts may apply a presumption that sentences falling within a properly calculated Guidelines range are reasonable. Rita, 127 S. Ct.2456, 2462. Although Rita recognizes that when a judge's decision accords with the Commission's view it is probable that the sentence is reasonable, Rita also contemplates that the judge may impose a different sentence if he concludes that a Guidelines sentence "'fails properly to reflect § 3553(a) considerations'" and that judges may "'disregard the Guidelines.'" Id. at 2465-66.

---

sentence on the basis of disagreement with the need for a 16-level offense level increase to satisfy the goals enumerated in 18 U.S.C. § 3553(a). To the extent that he does, we disagree that our law has that affect. The advisory nature of the Guidelines after Booker and the option to impose a non-Guideline sentence do allow a district court to lower a sentence from a Guidelines range that it feels is too harsh as a result of the application of the 16-level enhancement. Similarly, it has the option to impose a sentence higher than a Guidelines range it feels is too lenient if a 16-level enhancement is not imposed. See United States v. Tzep-Mejia, 461 F.3d 522 (5th Cir. 2006). Whether the district court's reasons for deviating from a Guideline sentence based on the effects of the 16-level enhancement are stated in terms of disagreement with the policy behind the enhancement or in terms of § 3553(a), our circuit precedent does not foreclose a district court's discretion to adjust the sentence on that basis.

[2] The Government contends that Gomez-Herrera did not preserve his "Fanfan" argument because he did not present it to the district court. The Government is correct that Gomez-Herrera did not specifically argue that the inability of the district court to consider his arguments against the 16-level enhancement and fast-track disparity effectively rendered the Guidelines mandatory in violation of Booker and Fanfan. However, Gomez-Herrera did argue that the district court should exercise its discretion to impose a sentence that would minimize the sentencing disparity created by fast track programs in some sentencing jurisdictions but not others, citing Booker. This was sufficient to preserve this argument for full review by this court. United States v. Akpan, 407 F.3d 360, 375-76 (5th Cir. 2005); United States v. Olis, 429 F.3d 540, 544 (5th Cir. 2005); Fed. R. Crim. P. 51(b).

In Kimbrough v. United States, 128 S.Ct. 558 (2007), the Supreme Court held that, in light of Booker, a district court may deviate from the advisory Guidelines range for crack cocaine offenses based on a conclusion that the disparity between ranges for crack and powder cocaine results in a sentence greater than necessary to achieve the sentencing goals of § 3553(a). Id. at 564. Kimbrough's guilty plea acknowledged that he was accountable for 56 grams of crack cocaine and 92.1 grams of powder cocaine. This quantity of drugs yielded a base offense level of 32. U.S.S.G. § 2D1.1(c)(2004). With other adjustments and a criminal history category of II, Kimbrough's Guideline range on the drug charges was 168 to 210 months. He also had a firearm offense for which the Guidelines sentence was the statutory minimum of 60 months. Thus Kimbrough's final advisory Guideline range was 228 to 270 months or 19 to 22.5 years. Id. at 565. The sentencing court stated that this range was greater than necessary to accomplish the sentencing goals in 18 U.S.C. § 3553(a). The judge considered the sentencing factors and also commented that the case exemplified the "disproportionate and unjust effect that crack cocaine guidelines have in sentencing." Id. The comparable range if the defendant had been sentenced under the powder cocaine guidelines was 97 to 106 months, including 60 months for the firearm charge. Id. The sentencing court concluded that the statutory minimum sentence was "clearly long enough" to satisfy the sentencing goals of § 3553(a) and imposed a sentence of 15 years or 180 months.

The Supreme Court held that under United States v. Booker, 543 U.S. 220 (2005), the cocaine Guidelines, like all other Guidelines, are advisory only and appellate courts err in holding that the crack/powder disparity reflected in the Guidelines is effectively mandatory. Id. at 564. Significantly, the Court rejected the Government's argument that the sentencing disparity in the Guidelines was in accordance with a policy mandated by Congress. Rather it found that Congress mandated only statutory maximum and minimum sentences for certain quantities of the drug, not the 100 to 1 ratio reflected in the Guidelines

for the full range of drug quantities.[3] Id. at 571-72. The Supreme Court held that a district court could treat as advisory the Guidelines range for crack cocaine offenses based on a conclusion that the disparity between ranges for crack and powder cocaine results in a sentence greater than necessary to achieve the sentencing goals of § 3553(a). However, "possible variations among district courts are constrained by the mandatory minimums Congress prescribed in the 1986 Act" which district courts may not ignore. Id. at 574.

After Rita and Kimbrough, a district court should consider the applicable Sentencing Guidelines range, as well as any Guidelines policy - but the district court may deviate from both to the extent that any deviation is done to tailor the sentence in light of § 3553(a) and Congressional sentencing policy. Rita and Kimbrough do not completely unfetter a district court's sentencing discretion. Sentencing courts are still constrained by Congressional policies, for example the mandatory minimum sentences contained in the Anti-Drug Abuse Act of 1986, 100 Stat. 3207.

Gomez-Herrera argued in his initial brief that this court should vacate and remand for resentencing so the district court could consider his fast track disparity argument in light of its authority to disagree with the policy choices of the Guidelines. In his supplemental brief he argues that Kimbrough overrules the line of Fifth Circuit authority that limited the district court's ability to consider such arguments at the time of sentencing, namely Aguirre-Villa, United States v. Duhon, 440 F.3d 711 (5th Cir. 2006), and United States v. Tzep-Mejia, 461 F.3d 522, 527 (5th Cir. 2006). As set forth below, Kimbrough, which concerned a district court's ability to sentence in disagreement with Guideline

---

[3] The Anti-Drug Abuse Act of 1986 adopted a 100-to-1 ration between cocaine powder and crack cocaine. The Act's five year mandatory minimum sentence applies to any defendant accountable for 5 grams of crack or 500 grams of powder. 21 U.S.C. § 841(b)(1)(B)(ii). Its ten year mandatory minimum sentence applies to defendants accountable for 50 grams of crack or 5,000 grams of powder. 21 U.S.C. § 841(b)(1)(A)(ii), (iii). Kimbrough, 128 S.Ct. at 567. The Act did not dictate sentences for drug quantities between these amounts.

policy, does not control this case, which concerns a district court's ability to sentence in disagreement with Congressional policy.

According to United States v. Mejia, 461 F.3d 158, 160-61 (2d Cir. 2006), fast-track programs originated in the Southern District of California and later spread to other districts along the southwest border, where the number of illegal re-entry cases was overwhelming the capacity to prosecute violators. The United States Attorneys in those districts created the programs that offered defendants who violated 8 U.S.C. § 1326 an array of options, such as plea agreements and recommendations for reduced sentences, in return for the defendants' waiver of various rights, including: indictment by a grand jury, trial by jury, presentation of a pre-sentence report, and appellate review of the sentence.

In 2003, Congress approved such programs in section 401(m)(B) of the Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act ("PROTECT Act"). That statute instructed the United States Sentencing Commission to issue a policy statement authorizing a downward departure "pursuant to an early disposition program authorized by the Attorney General and the United States Attorney", which the Sentencing Commission did in U.S.S. G. § 5K3.1. Pub. L. No. 108-21, 117 Stat. 650, 675 (2003) (codified in scattered sections of 18, 28, and 42 U.S.C.).

In September 2003, the Attorney General set forth the general criteria that must be satisfied in order to obtain the Attorney General's authorization for "fast-track" programs:

> (A) (1) the district confronts an exceptionally large number of a specific class of offenses within the district, and failure to handle such cases on an expedited or "fast-track" basis would significantly strain prosecutorial and judicial resources available in the district; or (2) the district confronts some other exceptional local circumstance with respect to a specific class of cases that justifies expedited disposition of such cases;
>
> (B) declination of such cases in favor of state prosecution is either unavailable or clearly unwarranted;

(C) the specific class of cases consists of ones that are highly repetitive and present substantially similar fact scenarios; and

(D) the cases do not involve an offense that has been designated by the Attorney General as a "crime of violence."

Memorandum from Attorney General John Ashcroft Setting Forth Justice Department's "Fast-Track" Policies (Sept. 22, 2003), 16 Fed. Sent. Rep. 134, 2003 WL 23475483, at *2 (Dec. 2003). Once the program is authorized, the United States Attorney may implement the program as he deems appropriate for his district, provided that the program is otherwise consistent with the law, the Sentencing Guidelines and Department regulations and policy. Id. Any program established must include certain features: expedited disposition, waiver of pre-trial motions by the defendant, waiver of appeal, and waiver of the right to habeas corpus. Id. at *2-*3.

Clearly, Congress gave the Attorney General the discretion to establish programs where he thinks they are needed. As a matter of prosecutorial discretion, the Attorney General has established the criteria for situations which support a proposal for a fast track program and the base requirements for defendants to qualify for early disposition within those authorized programs. Gomez-Herrera argues that while Congress has authorized the Attorney General to establish fast-track programs, it has not compelled the district courts to restrict fast-track departures to districts in which such programs have been established, citing Pub.L. No. 108-21, 117 Stat. 650, § 401(m)(2003). Section 401(m) states, in relevant part,

(m) Reform of Existing Permissible Grounds of Downward Departures.--Not later than 180 days after the enactment of this Act, the United States Sentencing Commission shall--

. . .

(2) promulgate, pursuant to section 994 of title 28, United States Code--

. . .

   (B) a policy statement authorizing a downward departure of not more than 4 levels if the Government files a motion for such departure <u>pursuant to an early disposition program authorized by the Attorney General and the United States Attorney</u>;

(Underlining added). Congress accordingly limits departures for early disposition programs to those "authorized by the Attorney General." Gomez-Herrera's argument that Congress has not compelled district courts to restrict fast-track departures to districts in which such programs have been established ignores the text of the above quoted statute that plainly limits fast-track departures to early disposition programs authorized by the Attorney General.

   The prosecutorial discretion granted to the Attorney General regarding whether and where to establish fast track programs dictates whether a defendant has an opportunity to be offered early disposition under a fast track program. Even in a fast track jurisdiction, a defendant is not automatically entitled to the benefits of the program. Fast track disposition is generally commenced by an offer from the government to enter into a plea agreement. See United States v. Zapata-Parra, 2008 U.S. App. LEXIS 1520, at *2-3 (10th Cir. January 23, 2008)(unpublished); See also United States v. Martinez-Trujillo, 468 F.3d 1266, 1269 (10th Cir. 2006)("The decision that a defendant be 'fast-tracked' is not made by the defendant but by the United States Attorney.") In Zapata-Parra, the defendant initially declined the government's offer to enter a pre-indictment fast track plea. He later argued that he should be sentenced at the offense level he would have received if he had accepted the government's fast track plea offer. 2008 U.S. App. LEXIS 1520, at *4. In that case the government argued "that if it agreed in every case to renew fast track offers at sentencing, the result would totally undermine the United States Attorney's fast track program intended to make quick resolution of pending cases so that resources are not wasted by the government, the defense, and the courts." Id. at *5. Prosecutorial discretion evidenced in these programs would also be undermined

if defendants outside of fast track programs received the same benefits as those in the program without the economies of actual early disposition.

The government's decision to offer a fast track plea offer is no different from the Attorney General's prosecutorial discretion regarding whether to prosecute, what charge to file, whether to offer a plea agreement, etc. These are areas generally left entirely to the prosecutor's discretion. See Bordenkircher v. Hayes, 434 U.S. 357, 364 (1978)(Holding that due process was not violated when a state prosecutor carries out a threat made during plea negotiations to reindict the accused on more serious charges if he does not plead guilty to the offense with which he was originally charged.)

The Sentencing Commission has recognized that sentencing disparity may result from the adoption of fast track programs in only some jurisdictions.

> The new statutory requirement that the Attorney General approve all early disposition programs hopefully will bring about greater uniformity and transparency among those districts that implement authorized programs. Defendants sentenced in districts without authorized early disposition programs, however, can be expected to receive longer sentences than similarly-situated defendants in districts with such programs. This type of geographical disparity appears to be at odds with the overall Sentencing Reform Act goal of reducing unwarranted disparity among similarly-situated offenders.

U.S. Sentencing Comm'n, Report to Congress: Downward Departures from the Federal Sentencing Guidelines at 66-67 (Oct. 2003), available at http://www.ussc.gov/departrpt03/departrpt03.pdf. At least one court has concluded that the Sentencing Commission rejected compensatory downward departures as a remedy for the disparity because the Sentencing Commission added, however, that the Congressional goal of limiting downward departures might be undermined if courts in districts that have no fast-track program try to compensate for the lack:

> Furthermore, sentencing courts in districts without early disposition programs, particularly those in districts that adjoin districts with

such programs, may feel pressured to employ other measures-- downward departures in particular--to reach similar sentencing outcomes for similarly situated defendants. This potential response by sentencing courts could undermine the goal of the PROTECT Act to reduce the incidence of downward departures.

Id. at 67, as cited in Mejia, 461 F.3d at 67.

Sentencing disparity is an appropriate factor to be considered in imposing a sentence.  Under subsection (6) of Section 3553(a), the court shall consider "the need to avoid <u>unwarranted</u> sentence disparities among defendants with <u>similar records </u>who have been found guilty of <u>similar conduct</u>."  18 U.S.C. § 3553(a)(6) (Emphasis added).  The government asserts that any disparity resulting from fast track programs is not unwarranted as it is based on the exercise of prosecutorial discretion Congress built into the early disposition program.  The government also argues that Gomez-Herrera would not qualify for the early disposition program so there is no disparity between his sentence and that of a defendant with a similar record.

First, because any disparity that results from fast-track programs is intended by Congress, it is not "unwarranted" within the meaning of § 3553(a)(6).  United States v. Martinez-Trujillo, 468 F.3d 1266, 1268-69 (10th Cir. 2006).

> We cannot say that a disparity is "unwarranted" within the meaning of § 3553(a)(6) when the disparity was specifically authorized by Congress in the PROTECT Act. See United States v. Castro, 455 F.3d 1249, 1252 (11th Cir. 2006) ("Any disparity created by section 5K3.1 does not fall within the scope of section 3553(a)(6). When Congress directed the Sentencing Commission to allow the departure for only participating districts, Congress implicitly determined that the disparity was warranted." (internal citation omitted)); United States v. Mejia, 461 F.3d 158, 163 (2d Cir. 2006) ("Congress expressly approved of fast-track programs without mandating them; Congress thus necessarily decided that they do not create the unwarranted sentencing disparities that it prohibited in Section 3553(a)(6)."); United States v. Aguirre-Villa, 460 F.3d 681, 683 (5th Cir. 2006) ("The refusal to factor in . . . the sentencing

disparity caused by early disposition programs does not render a sentence unreasonable. . . . Congress must have thought the disparity warranted when it authorized early disposition programs without altering § 3553(a)(6)."); United States v. Perez-Pena, 453 F.3d 236, 244 (4th Cir. 2006) ("[T]here is no reason to believe that Congress intended that sentencing disparities between defendants who benefitted from prosecutorial discretion and those who did not could be 'unwarranted' within the meaning of § 3553(a)(6). We therefore conclude that the need to avoid such disparities did not justify the imposition of a below-guidelines variance sentence."); United States v. Marcial-Santiago, 447 F.3d 715, 718 (9th Cir. 2006) ("[W]e cannot say that the disparity between Appellants' sentences and the sentences imposed on similarly-situated defendants in fast-track districts is 'unwarranted' within the meaning of § 3553(a)(6). When Congress passed the PROTECT Act, it did so with knowledge that 18 U.S.C. § 3553(a)(6) was directing sentencing courts to consider the need to avoid unwarranted sentencing disparities. By authorizing fast-track programs without revising the terms of *§ 3553(a)(6)*, Congress was necessarily providing that the sentencing disparities that result from these programs are warranted and, as such, do not violate *§ 3553(a)(6)*.").

Id. See also United States v. Hernandez-Fierros, 453 F.3d 309, 314 (6th Cir. 2006); United States v. Sebastian, 436 F.3d 913, 916 (8th Cir. 2006); United States v. Martinez-Flores, 428 F.3d 22, 30 (1st Cir. 2005). We agree that any sentencing disparity resulting from fast track disposition programs is not unwarranted as the disparity was also intended by Congress.[4]

These courts' holdings that a district court may not vary from the Guidelines on the basis of sentencing disparity intended by Congress were not called into question by Rita or Kimbrough. Rita or Kimbrough addressed only

---

[4] Another way of stating this argument is that it would be an abuse of discretion for the district court to deviate from the Guidelines on the basis of sentencing disparity resulting from fast track programs that was intended by Congress. A district court abuses its discretion if its ruling rests on an erroneous view of the law. Cooter & Gell v. Hartmaxx Corp. 496 U.S. 384, 405 (1990). The Supreme Court in Kimbrough recognized and respected the sentencing disparity created by statutory mandatory minimum sentences for certain quantities of crack vs. powder cocaine. A district court ruling deviating from the Guidelines on the basis of sentencing disparity created by Congressionally mandated fast track programs only in districts approved by the Attorney General would result from an erroneous view of the law.

a district court's discretion to vary from the Guidelines based on a disagreement with <u>Guideline</u>, not Congressional, policy.

We also question as a factual matter whether Gomez-Herrera has established that he is similarly situated to a defendant who would be entitled to a fast-track adjustment in those districts with a fast track program. Section 3553(a)(6) directs the district court only to consider "<u>unwarranted</u> sentence disparities among defendants with <u>similar records </u>who have been found guilty of <u>similar conduct</u>." (Underlining added). Gomez-Herrera does not argue that he offered to meet the minimum requirements for participation in a fast track program; i.e. that he enter into a plea agreement, agree to a factual basis, agree not to file any of the motions described in Fed. R. Crim. P. 12(b)(3), agree to waive appeal and agree to waive the opportunity to challenge his conviction under 28 U.S.C. § 2255. Rather, the record reflects that there was no plea agreement in this case and Gomez-Herrera filed a Rule 16 motion for discovery, which is one of the motions described in Fed. R. Crim. P. 12(b)(3). He did not waive his right to appeal or to challenge his sentence under 28 U.S.C. § 2255. He did however agree to a factual basis. Gomez-Herrera seeks the benefits of the fast track program, without suffering its detriments. See Mejia, 461 F.3d at 162 (noting the "false equivalence between (on the one hand) defendants in fast-track jurisdictions who receive a benefit in exchange for the acceptance of certain detriments, and (on the other hand) a defendant in [Gomez-Herrera's] position, who claims the benefit without suffering the detriment.")[5] See also Gall v. United

---

[5] The Government also argues that Gomez-Herrera may not qualify for early disposition because his case involves a prior conviction that is a crime of violence. The government states its understanding that some districts do not offer fast track treatment to defendants who have a prior conviction for a crime of violence. Cases involving crimes of violence are not counted to determine whether a district confronts an exceptionally large number of cases in seeking to qualify for a fast track program. Memorandum from Attorney General John Ashcroft Setting Forth Justice Department's "Fast-Track" Policies (Sept. 22, 2003), 16 Fed. Sent. Rep. 134, 2003 WL 23475483, at *2 (Dec. 2003). Once a fast track program is authorized, the U.S. Attorney can implement it as he or she deems appropriate consistent with the law, the Sentencing

States, 128 S.Ct. 586, 600 (2007)(In assessing the factual basis for sentencing disparity, the Court noted that "neither the Court of Appeals nor the Government has called our attention to a comparable defendant who received a more severe [or lenient] sentence.")

For the foregoing reasons we reject Gomez-Herrera's argument that his sentence must be vacated in light of Kimbrough.  We turn now to his other arguments in this appeal.

III.

Gomez-Herrera next contends that, even if there was no Fanfan error, his sentence is substantively and procedurally unreasonable.  In Gall, the Court held that review of a sentence is for abuse of discretion.

> Regardless of whether the sentence imposed is inside or outside the Guidelines range, the appellate court must review the sentence under an abuse-of-discretion standard.  It must first ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence-including an explanation for any deviation from the Guidelines range.  Assuming that the district court's sentencing decision is procedurally sound, the appellate court should then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard.  When conducting this review, the court will, of course, take into account the totality of the circumstances, including the extent of any variance from the Guidelines range.  If the sentence is within the Guidelines range, the appellate court may, but is not required to, apply a presumption of reasonableness.

Id. at 597.

Gomez-Herrera argues that his sentence was procedurally

---

Guidelines and Department regulations and policy.  Id.  In United States v. Bonilla, 2007 WL 2859683, at *3 (11th Cir. Oct.3, 2007), the Eleventh Circuit held that it was not plain error to exclude a defendant from eligibility for fast track treatment because of a prior crime of violence.

unreasonable because the district court did not provide adequate reasons for rejecting his arguments for a non-Guidelines sentence. The government argues that plain error review should apply to this issue because Gomez-Herrera did not object to the adequacy of the district court's reasons at sentencing. We need not decide the appropriate level of review, because as explained below, the district court's reasons were sufficient under any standard.

Prior to Rita, this court held that if a district court imposes a sentence within the properly determined Guidelines range, little explanation is required. See United States v. Mares, 402 F.3d 511, 519 (5th Cir. 2005). In Rita, the Court indicated that more than a brief statement may be required when a district court is presented with nonfrivolous arguments for a sentence outside the Guidelines. 127 S. Ct. at 2468-69. Nevertheless, the Court concluded that the district court's reasons for rejecting the defendant's § 3553(a) arguments for a non-Guidelines sentence in that case were, although brief, legally sufficient. Id. at 2469. Specifically, the Court noted that the record made clear that the judge listened to and considered the arguments and evidence but simply found the circumstances insufficient to warrant a sentence below the Guidelines range. Id. The judge said that the range was not "inappropriate" and that a sentence at the bottom of the range was "appropriate." Id. The Court acknowledged that the judge might have said more, but was not required to do so. Id.

In this case, the record makes clear that the judge reviewed not only the PSR, to which there were no objections, but also Gomez-Herrera's and the government's sentencing memorandum setting forth each party's position on the appropriate sentence. These arguments were repeated at the sentencing hearing. The court also received a written statement from the defendant's father and his former employer, and an oral statement by his niece in support of a lower sentence for the defendant. The court noted that Gomez-Herrera

sought a sentence below the Guidelines range based on various factors but stated that it was persuaded by the arguments at the hearing and in the sentencing memos that he should not depart downward from the Guidelines range. The court also concluded that there was no reason to sentence Gomez-Herrera at either extreme of the Guideline range and that it would choose the midpoint. This statement of reasons is not substantially different from that given and found to be legally adequate in Rita. Accordingly, the defendant's argument that his sentence must be overturned for an inadequate statement of reasons is rejected.

Gomez-Herrera also argues that his sentence was substantively unreasonable. As he did in the district court, Gomez-Herrera asserts that several factors warranted a sentence below the Guidelines range.[6] First, he contends that his motivation for reentry was to see his ailing father before he died. Second, he argues that he lived in the United States from the age of three months until he was deported at the age of 51, and that Mexico is an alien country and culture. This cultural assimilation, he asserts, has been recognized as supporting a downward departure. Next, he contends that the 16-level enhancement was adopted by the Commission without empirical study and that it overstated the seriousness of the offense, particularly compared to other "much more serious crimes." For these reasons, he asserts that the sentence imposed does not properly account for the nature and circumstances of the offense or the history and characteristics of the defendant, and that it is greater than necessary to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, to protect the public and promote deterrence. Finally, he argues that the sentence subjected him to unwarranted sentencing disparity because he was

---

[6] Because the defendant raises only factual and legal bases for a different sentence that were also presented to the district court, we apply the ordinary standard of review to this issue.

unable to avail himself of early disposition programs.

As stated above, the district court considered and obviously rejected these arguments as a basis for a non-Guidelines sentence.  As Gomez-Herrera was sentenced within a properly calculated Guidelines range, his sentence is entitled to a presumption of reasonableness that we see no reason to disturb.

IV.

In light of Apprendi v. New Jersey, 530 U.S. 466 (2000), Gomez-Herrera challenges the constitutionality of § 1326(b)'s treatment of prior felony and aggravated felony convictions as sentencing factors rather than elements of the offense that must be found by a jury.  This court has held that this issue is "fully foreclosed from further debate."  United States v. Pineda-Arrellano, 492 F.3d 624, 625 (5th Cir. 2007), cert. denied, 128 S.Ct. 872 (2008).

V.

For the foregoing reasons, Gomez-Herrera's sentence is AFFIRMED.