# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 10-3757

———————

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Missouri. |
| Baltazar Jimenez-Perez, | * | |
| | * | |
| Appellant. | * | |

———————

Submitted: June 17, 2011
Filed: October 18, 2011

———————

Before MURPHY and SMITH, Circuit Judges, and SCHREIER,[1] District Judge.

———————

SMITH, Circuit Judge.

Baltazar Jimenez-Perez pleaded guilty to illegal reentry into the United States subsequent to removal, in violation of 8 U.S.C. § 1326(a). At sentencing, Jimenez-Perez moved for a downward variance to compensate for an allegedly unwarranted sentencing disparity precipitated by the unavailability of a "Fast Track" early-disposition program in the Eastern District of Missouri, where authorities indicted him. The district court, citing a lack of "definitive" guidance from our court on this issue, denied Jimenez-Perez's motion for a downward variance, reasoning that it

---

[1]The Honorable Karen E. Schreier, Chief Judge, United States District Court for the District of South Dakota, sitting by designation.

lacked the discretion to do so. Consequently, the district court sentenced Jimenez-Perez to a within-Guidelines sentence of 30 months' imprisonment. Jimenez-Perez appeals and, for the following reasons, we vacate his sentence and remand for resentencing.

## I. *Background*

On May 23, 2010, a Bridgeton, Missouri police officer stopped Jimenez-Perez for traffic violations. Thereafter, the officer learned that Jimenez-Perez was in the country illegally and tendered custody of Jimenez-Perez to Immigration and Customs Enforcement (ICE). Authorities later learned that the federal government had previously removed Jimenez-Perez from the country on January 15, 2008, near Laredo, Texas.

Jimenez-Perez pleaded guilty to a one-count indictment charging him with illegal reentry, in violation of 8 U.S.C. § 1326(a). In advance of sentencing, Jimenez-Perez filed a sentencing memorandum arguing that he deserved a downward variance because a Guidelines sentence would result in an unwarranted sentencing disparity under 28 U.S.C. § 3553(a)(6). Specifically, Jimenez-Perez urged that similarly situated defendants in other jurisdictions may avail themselves of "Fast Track" programs that offer shorter sentences in exchange for expedited plea and sentencing procedures, thereby yielding less incarceration for the same or similar offenses.

At his sentencing hearing, Jimenez-Perez renewed his motion for a downward variance based on the unavailability of "Fast Track," and the district court denied the request, expressing that the court would "feel more comfortable [in downward varying on this basis] if [it] had something more definitive from the Eighth Circuit." Consequently, the district court sentenced Jimenez-Perez to a Guidelines sentence of 30 months' imprisonment.

Jimenez-Perez appeals, arguing that the district court (1) procedurally erred by failing to acknowledge its own independent authority to vary based on the unwarranted sentencing disparity caused by the unavailability of "Fast Track" in the Eastern District of Missouri, and (2) abused its sentencing discretion by issuing a sentence that is substantively unreasonable in that it fails to take into account relevant § 3553(a) factors—namely, the desire to avoid unwarranted sentencing disparities.

## II. *Discussion*

On appeal, Jimenez-Perez challenges his sentence, alleging that it is (1) the product of the district court's procedural error and (2) substantively unreasonable. First, Jimenez-Perez maintains that the district court procedurally erred by failing to recognize its own discretionary authority to vary downward from Jimenez-Perez's advisory Guidelines range to account for a sentencing disparity among illegal reentry defendants caused by the inconsistent availability of "Fast Track" sentencing programs. Second, Jimenez-Perez contends that his sentence is substantively unreasonable because it fails to account for all "relevant factors," including the need under 18 U.S.C. § 3553(a)(6) "to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." For the reasons stated below, we hold that the district court procedurally erred by failing to recognize its sentencing discretion to vary downward, and we decline to address Jimenez-Perez's second argument that his sentence is substantively unreasonable.

## A. *Overview of "Fast Track"*

"Fast-[T]rack, or 'early[-]disposition' programs, were used in federal district courts as early as 1994," *United States v. Reyes-Hernandez*, 624 F.3d 405, 409 (7th Cir. 2010), when United States Attorneys began implementing these programs in their respective districts "without any congressional warrant" to "help[] manage an exploding volume of immigration-related cases," Thomas E. Gorman, Note, *Fast-Track Sentencing Disparity: Rereading Congressional Intent to Resolve the Circuit Split*, 77 U. Chi. L. Rev. 479, 485 (2010); *accord Reyes-Hernandez*, 624 F.3d at

409–10. United States Attorneys implemented these programs predominantly in jurisdictions along the United States's southwestern border with the Republic of Mexico, *Reyes-Hernandez*, 624 F.3d at 409. Nearly a decade later, "Congress formalized the practice by enacting the Prosecutorial Remedies and Tools Against the Exploitation of Children Today Act of 2003 ("PROTECT Act"), Pub. L. No. 108–21, 117 Stat. 650 (2003)." *Id.* at 410. Congress made crimes against children the PROTECT Act's primary focus but also paired the PROTECT Act with the Feeney Amendment. Katherine Arnold McCurry, Comment, *Rejecting Consideration of the "Fast-Track Disparity" in a Post-*Kimbrough *World*, 45 Wake Forest L. Rev. 1401, 1402 & n.12 (2010) (citing § 401, 117 Stat. at 667–76). The Feeney Amendment technically was an amendment to the Child Abduction Prevention Act, the PROTECT Act's companion bill. *Reyes-Hernandez*, 624 F.3d at 410.

> According to the [legislative] commentary [accompanying the Feeney Amendment], Congress sanctioned "limited departures" under structured early disposition programs, although such programs were to be reserved only for offenses "whose high incidence within the district has imposed an *extraordinary* strain on the resources of that district as compared to other districts." H.R. Rep. No. 108-48, at 7 (2003) (emphasis added); *see also* [*United States v.* ]*Martinez-Martinez*, 442 F.3d [539,] 542 [(7th Cir. 2006)]. Congress also commented that the bill "does not confer authority to depart downward on an *ad hoc* basis in individual cases." H.R. Rep. No. 108–48, at 7.

*Id.* With the Feeney Amendment and other additions, the PROTECT Act emerged from Congress "as part of an overarching initiative to respond to a purported increase in departures from the [G]uidelines and provide meaningful appellate review of such cases." *Id.*

In pertinent part, the PROTECT Act "directed the Sentencing Commission to promulgate a policy statement 'authorizing a downward departure of not more than 4 levels if the Government files a motion for such departure pursuant to an early

disposition program authorized by the Attorney General and the United States Attorney.'" *United States v. Sebastian*, 436 F.3d 913, 915–916 (8th Cir. 2006) (quoting § 401(m)(2)(B), 117 Stat. at 675). The Commission promptly carried out Congress's directive "by adopting USSG § 5K3.1, concerning 'Early Disposition Programs,' which provides that '[u]pon motion of the Government, the court may depart downward not more than 4 levels pursuant to an early disposition program' authorized by the Attorney General and the United States Attorney for the district." *Id.* at 916 (alteration in original). "This language tracks that of the PROTECT Act essentially verbatim." *United States v. Arrelucea-Zamudio*, 581 F.3d 142, 145 (3d Cir. 2009).

As the Seventh Circuit has observed, "the development of [F]ast-[T]rack programs has been prolific." *Reyes-Hernandez*, 624 F.3d at 412. Since the Commission's incorporation of § 5K3.1 into the Guidelines, "the Attorney General has authorized such programs in several districts along the southwest and western borders of the United States, as well as in Nebraska and North Dakota, but not in Eastern Missouri," *Sebastian*, 436 F.3d at 916, where Jimenez-Perez was sentenced.

## B. *Procedural Error*

"We review a district court's sentence first for procedural error and then for substantive reasonableness." *United States v. Hull*, 646 F.3d 583, 586 (8th Cir. 2011) (citing *United States v. Feemster*, 572 F.3d 455, 461 (8th Cir. 2009) (en banc)). In this initial procedural-error review,

> [w]e first ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the 18 U.S.C. § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence.

*Id.* (quotations and citation omitted).

In his first point on appeal, Jimenez-Perez contends that the district court procedurally erred when it concluded that it lacked the discretion to vary downward from the Guidelines advisory sentencing range based on the allegedly unwarranted sentencing disparity caused by the lack of Fast Track. The government attempts to rebut Jimenez-Perez's argument by relying on our unpublished per curiam decision in *United States v. Rosario-Moctezuma*, 411 F. App'x 942 (8th Cir. 2011), in which we held that Jimenez-Perez's "argument is squarely foreclosed by our decision in *United States v. Gonzalez–Alvarado*, 477 F.3d 648, 651 (8th Cir. 2007), *abrogated on other grounds by Gall v. United States*, 552 U.S. 38, 128 S. Ct. 586, 169 L. Ed.2d 445 (2007), where we concluded that 'variances based on the absence of [F]ast-[T]rack programs are impermissible.'" *Rosario-Moctezuma*, 411 F. App'x at 943–44.

However, as Jimenez-Perez points out, we decided *Gonzalez-Alvarado*, upon which our unpublished *Rosario-Moctezuma* relied, before the Supreme Court decided *Kimbrough v. United States*, 552 U.S. 85 (2007), which held that district courts are permitted to vary downward from a properly calculated Guidelines range to compensate for the Guidelines' then-applicable 100:1 ratio governing powder- and crack-cocaine offenses. Our four-paragraph decision in *Rosario-Moctezuma* makes no mention of *Kimbrough* and, because it is unpublished, lacks controlling authority. *United States v. Robertson*, 606 F.3d 943, 952 n.5 (8th Cir. 2010) (citing, *inter alia*, 8th Cir. R. 32.1A). Finally, Jimenez-Perez notes that, "since [he] was sentenced, the Seventh Circuit has joined the [First], [Third], and [Sixth] circuits in holding that the absence of a [F]ast-[T]rack sentencing option may be considered at sentencing to avoid an unwarranted disparity." (Citing *Reyes-Hernandez*, 624 F.3d at 421; *United States v. Camacho-Arellano*, 614 F.3d 244, 245 (6th Cir. 2010); *Arrelucea-Zamudio*, 581 F.3d at 149; *United States v. Rodríguez*, 527 F.3d 221, 231 (1st Cir. 2008).) In response to this final note, the government observes that the circuits are split on this subject, with the Fifth, Ninth, and Eleventh Circuits all disagreeing with the First,

Third, Sixth, and Seventh. (Citing *United States v. Gonzalez-Zotelo*, 556 F.3d 736, 740 (9th Cir.), *cert. denied*, 130 S. Ct. 83 (2009); *United States v. Vega-Castillo*, 540 F.3d 1235, 1238–39 (11th Cir.), *reh'g en banc denied*, 548 F.3d 980 (11th Cir. 2008), *cert. denied*, 129 S. Ct. 2825 (2009); *United States v. Gomez-Herrera*, 523 F.3d 554, 563–64 (5th Cir.), *cert. denied*, 129 S. Ct. 624 (2008).)

Upon review of these cases, we hold that *Kimbrough* undermines the rationale of our prior decisions that disallowed variances based on the unavailability of Fast-Track in a particular judicial district. We based our pre-*Kimbrough* decision in *Gonzalez-Alvarado* on another pre-*Kimbrough* precedent, *Sebastian*. In *Sebastian*, we observed, as the government does here in its brief, that in 2003, *Congress*—not the Sentencing Commission itself—enacted the PROTECT Act, directing the Sentencing Commission "to promulgate a policy statement 'authorizing a downward departure of not more than 4 levels if the Government files a motion for such departure pursuant to an early disposition program authorized by the Attorney General and the United States Attorney.'" 436 F.3d at 915–16 (quoting § 401(m)(2)(B), 117 Stat. at 675). The government asserts that the presence of congressional policy is dispositive because the *Kimbrough* Court *relied* on the absence of a congressional directive establishing the 100:1 ratio. *See* 552 U.S. at 102 ("The Government acknowledges that the Congress did not *expressly* direct the Sentencing Commission to incorporate the 100:1 ratio in the Guidelines." (quotations and citation omitted)). Accordingly, the government avers that "[c]ontrary to [Jimenez-Perez's] position, several courts have reasoned that, while *Kimbrough* permits sentencing courts to vary based on disagreements with [G]uidelines policy, it doesn't authorize variances based on disagreement with congressional policy, and as '[F]ast-[T]rack' was instituted by Congress, not the Sentencing Commission, courts cannot find the disparity created unwarranted." (Citing *Gonzalez-Zotelo*, 556 F.3d at 740; *Vega-Castillo*, 540 F.3d at 1238–39; *Gomez-Herrera*, 523 F.3d at 563–64.) In other words, "[t]hese Courts of Appeals focused on congressional policy expressed in the PROTECT Act as the sole factor distinguishing the [F]ast-[T]rack issue from

-7-

the crack[-]cocaine question in *Kimbrough*. Because of this, they essentially concluded that the Guidelines are binding on the [F]ast-[T]rack question." *Arrelucea-Zamudio*, 581 F.3d at 150.

However, as the Third Circuit succinctly stated, "[f]ocusing on congressional policy here is illusory." *Id.* The focus, rather, should not be whether Congress, through the PROTECT Act, blessed a sentencing disparity, making it warranted and thereby consistent with 18 U.S.C. § 3553(a)(6). Rather, the question is whether Congress, through the PROTECT Act, expressly curtailed a district court's sentencing discretion under the *entire array* of the § 3553(a) factors.

> There is no question that the Guidelines are advisory only. The congressional[-]policy argument attempts to carve out an exception to this *Booker* norm by binding a district court's sentencing discretion on the [F]ast-[T]rack issue. The crux of the argument is that the PROTECT Act's congressional directive sanctioning [F]ast-[T]rack programs in certain judicial districts necessarily authorizes disparate sentencing of immigration defendants between [F]ast-[T]rack and non-[F]ast-[T]rack districts, so that the disparity is not "unwarranted" under § 3553(a)(6). Thus, a district court cannot vary from the Guidelines range on the basis of a disagreement with the treatment of defendants in non-[F]ast-[T]rack districts because it is mandated by Congress. Most courts pre-*Kimbrough* took this position (see, for example, [*United States v.*] *Vargas*, 477 F.3d [94,] 98–99 [(3d Cir. 2007)] (collecting cases)), but it does not have continued vitality post-*Kimbrough*.

*Id.*

In *Kimbrough*, the Court recognized that "[t]he crack/powder disparity originated in the Anti-Drug Abuse Act of 1986 (1986 Act)," 552 U.S. at 95, but rejected the government's argument that the 1986 Act "implicitly" required the Commission and sentencing courts to apply the 100:1 ratio, *id*. at 102–05.

-8-

Specifically, the Supreme Court observed that the 1986 Act, much like the PROTECT Act at issue here,

> says nothing about the appropriate sentences within [the applicable minimum and maximum sentences], and we decline to read any implicit directive into that congressional silence. Drawing meaning from silence is particularly inappropriate here, for Congress has shown that it knows how to direct sentencing practices in express terms. For example, Congress has specifically required the Sentencing Commission to set Guidelines sentences for serious recidivist offenders "at or near" the statutory maximum. 28 U.S.C. § 994(h).

*Id.* at 103 (internal citation omitted). All four of our sister circuits that have concluded that a district court may vary downward to compensate for the sentencing disparities that Fast Track's unavailability creates in a given judicial district, have done so based on the observation that nowhere in the PROTECT Act does Congress purport to limit a district court's sentencing discretion under all § 3553(a) factors. These courts have based that conclusion on the Supreme Court's rejection in *Kimbrough* of the notion that Congress could effectuate such a limit on a district court's sentencing discretion *implicitly*.[2]

---

[2]*See Reyes-Hernandez*, 624 F.3d at 418 ("If Congress wanted to prohibit judges in non-[F]ast [T]rack districts from disagreeing with § 5K3.1 based on policy, Congress could have issued such a directive in unequivocal terminology."); *Camacho–Arellano*, 614 F.3d at 249 ("[T]he [PROTECT] Act 'neither forbids nor discourages the use of a particular sentencing rationale, and it says nothing about a district court's discretion to deviate from the guidelines based on [F]ast-[T]rack disparity.'" (quoting *Rodríguez*, 527 F.3d at 229)); *Arrelucea-Zamudio*, 581 F.3d at 150–51 ("The [*Kimbrough*] Court made clear that, absent an express directive from Congress, it would not read any implicit directive into the Anti-Drug Abuse Act of 1986. . . . The PROTECT Act contains no express congressional [F]ast-[T]rack directive that would constrain a sentencing judge's discretion to vary from the Guidelines."); *Rodríguez*, 527 F.3d at 229 ("While the *Kimbrough* Court acknowledged that a sentencing court can be constrained by express congressional

We join the majority of our sister circuits to have addressed this issue and conclude that our opinion in *Sebastian* has been undermined by the Supreme Court's intervening decision in *Kimbrough*. *See McCullough v. AEGON USA, Inc.*, 585 F.3d 1082, 1085 (8th Cir. 2009) ("A limited exception to the prior panel rule permits us to revisit an opinion of a prior panel if an intervening Supreme Court decision is inconsistent with the prior opinion."). Our conclusion rests on two grounds.

First, "*Kimbrough* made pellucid that when Congress exercises its power to bar district courts from using a particular sentencing rationale, it does so by the use of unequivocal terminology." *Rodriguez*, 527 F.3d at 230. Congress does so, for example, when it statutorily imposes a mandatory minimum or maximum sentence for a given offense. Indeed, as stated earlier, the Supreme Court admonished that "[d]rawing meaning from silence *is particularly inappropriate here*, for Congress has shown that it knows how to direct sentencing practices in express terms." *Kimbrough*, 552 U.S. at 103 (emphasis added). The PROTECT Act lacks any such express directive. *See, e.g.*, *Reyes-Hernandez*, 624 F.3d at 418 ("Importantly, in the text of the PROTECT Act, Congress did not specifically address a district court's discretion with respect to sentencing in non-[F]ast-[T]rack districts. While Congress 'explicitly' gave the Attorney General the ability to establish early disposition programs district by district, and instructed the Sentencing Commission to promulgate a guideline to implement those programs, it certainly did not explicitly forbid non-[F]ast-[T]rack districts from taking into account the effect of [F]ast-[T]rack dispositions under the 3553(a) factors."); *Arrelucea-Zamudio*, 581 F.3d at 151 ("The PROTECT Act contains no express congressional [F]ast-[T]rack directive that would constrain a sentencing judge's discretion to vary from the Guidelines."); *accord Rodriguez*, 527 F.3d at 229.

---

directives, such as statutory mandatory maximum and minimum prison terms, 128 S.Ct. at 571–72, the PROTECT Act—as the Fifth Circuit would have to concede—contains no such express imperative.").

-10-

Second, *Sebastian*, like other pre-*Kimbrough* cases, only inquired whether a district court may vary downward pursuant *exclusively* to 18 U.S.C. § 3553(a)(6). Section 3553(a)(6) directs district courts to sentence in a manner that reflects "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." As the First Circuit recognized, "*Kimbrough* counsels a new and different approach to section 3553(a)" generally, and its "organic reading of section 3553(a) suggests that a sentencing judge should engage in a more holistic inquiry." *Rodríguez*, 527 F.3d at 227–28. In *Kimbrough*, the Supreme Court admonished that "[s]ection 3553(a)(6) directs *district courts* to consider the need to avoid unwarranted disparities—*along with other § 3553(a) factors*—when imposing sentences." *Kimbrough*, 552 U.S. at 108 (second emphasis added) (citing *Gall*, 552 U.S. at 49–50 n.6 & 54 (2007)); *See also Reyes-Hernandez*, 624 F.3d at 420 ("A district court should consider all relevant § 3553(a) factors collectively, not just what is in § 3553(a)(6)." (citations omitted)); *Arrelucea-Zamudio*, 581 F.3d at 149 ("The [F]ast-[T]rack issue should not be confined to subsection (a)(6), which concerns 'avoid[ing] unwarranted sentencing disparities.' Instead, we hold that a sentencing judge has the discretion to consider a variance under the *totality* of the § 3553(a) factors (rather than one factor in isolation) . . . ." (emphasis added)).

In conclusion, we hold that the Supreme Court's decision in *Kimbrough* undermined this circuit's precedent holding that the PROTECT Act evinced a congressional intent to limit a district court's sentencing discretion to vary downward in recognition of the unavailability of Fast Track in a given judicial district. Simply put, "we clarify today that the absence of a [F]ast-[T]rack program and the resulting difference in the guidelines range should not be *categorically excluded* as a sentencing consideration." *Reyes-Hernandez*, 624 F.3d at 421 (citing *Rodríguez*, 527 F.3d at 229).

Our holding merely permits the sentencing judge to *consider* a
facially obvious disparity created by [F]ast-[T]rack programs among the

-11-

totality of § 3553(a) factors considered. However, we provide a word of caution that a [variance] from the guidelines premised solely on a [F]ast-[T]rack disparity may still be unreasonable. To withstand scrutiny, a [variance] should result from a holistic and meaningful review of all relevant § 3553(a) factors.

*Id.* Although the district court understandably felt bound by our prior rulings, its decision that it lacked discretion to vary downward from Jimenez-Perez's advisory Guidelines range in light of Fast Track's unavailability in the Eastern District of Missouri constituted procedural error. Accordingly, we vacate the district court's sentence and remand for resentencing.[3]

### III. *Conclusion*

Based on the foregoing, we vacate the district court's sentence as the product of procedural error and remand for resentencing in a manner consistent with this opinion.

---------------------------------

---

[3]Because we vacate and remand Jimenez-Perez's sentence as the product of procedural error, we need not reach his remaining issue on appeal regarding the substantive reasonableness of the vacated sentence. *See United States v. Robinson*, 639 F.3d 489, 498 n.4 (8th Cir. 2011) (declining to address whether a sentence was substantively unreasonable because the court had already vacated the sentence on the ground that the district court procedurally erred in scoring a prior conviction as a controlled-substance offense for purposes of the career-offender enhancement).