# United States Court of Appeals
## For the Eighth Circuit

_____

No. 11-3113

_____

United States of America

*Plaintiff - Appellee*

v.

Juan Carlos Figueroa-Alvarado, also known as Jose Luis Garcia, also known as
Edwin Zarmeno, also known as Juan Angel Torres-Rivera

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota - St. Paul

_____

Submitted: May 14, 2012
Filed: August 16, 2012
[Unpublished]

_____

Before SMITH, ARNOLD, and COLLOTON, Circuit Judges.

_____

PER CURIAM.

Juan Figueroa-Alvarado pleaded guilty to one count of unlawful reentry after
removal, in violation of 8 U.S.C. § 1326(a) and (b)(2) and 6 U.S.C. §§ 202 and 557.

The district court[1] sentenced him to 52 months' imprisonment. On appeal, Figueroa-Alvarado challenges the substantive reasonableness of his sentence. We affirm.

## I. *Background*

Figueroa-Alvarado pleaded guilty to unlawful reentry after removal. The presentence investigation report (PSR) assigned Figueroa-Alvarado a final offense level of 21 and a criminal history category of VI. The PSR applied a 16-level enhancement pursuant to U.S.S.G. § 2L1.2(b)(1)(A) because Figueroa-Alvarado previously had been deported following a conviction for a felony that is a crime of violence—third-degree robbery. The robbery occurred when Figueroa-Alvarado "approached a vehicle stopped at a railroad crossing," "smashed the passenger side window, reached into the vehicle," "punched the victim in the face," "t[ook] the keys from out of the victim's ignition[,] and [took the victim's] cell phone [from] the passenger seat."

The PSR calculated a Guidelines range sentence of 77 to 96 months' imprisonment for Figueroa-Alvarado. But the PSR noted that "[t]he defendant's criminal history category may significantly overrepresent the seriousness of the defendant's criminal history or the likelihood that the defendant will commit further crimes." Although Figueroa-Alvarado had an extensive criminal history dating back to 1994, 12 of his 14 prior convictions were for misdemeanor offenses. The PSR also indicated that Figueroa-Alvarado had an "extremely difficult" childhood in El Salvador and was physically abused by his father. Figueroa-Alvarado, along with his family, immigrated to the United States when he was 18. The PSR also stated that, in 1997, his then-wife submitted a "Petition for Alien Relative" to the Immigration and Naturalization Service (INS) on his behalf, but "due to her failure to appear and to

---

[1]The Honorable John R. Tunheim, United States District Judge for the District of Minnesota.

communicate with the INS, her petition on behalf of [Figueroa-Alvarado] was denied."

In a sentencing memorandum to the court, Figueroa-Alvarado described the conduct that led to the 16-level enhancement pursuant to U.S.S.G. § 2L1.2(b)(1)(A). He explained that the third-degree robbery conviction stemmed from a confrontation between Figueroa-Alvarado and another man regarding Figueroa-Alvarado's then-girlfriend. He saw the man sitting in his car and took the man's phone "to check its call logs and history . . . , and later that day returned the cell phone to [his girlfriend] (assuming she would return it to the other man)." Figueroa-Alvarado also stated that he served his sentence for the robbery, was deported to El Salvador, and then returned to the United States because of gang violence in El Salvador. Figueroa-Alvarado said that after he "refused to be associated with any gang" in El Salvador, "members of [a] gang went to the place where [he had been] staying . . . and murdered the adult male that was living there, assuming that it was [Figueroa-Alvarado], the targeted hit."

At sentencing, Figueroa-Alvarado testified to the facts in his sentencing memorandum. He also said that he "came to the [United States] when [he] was just a little boy" and that he "ha[d] tried three different times . . . to legalize [his] status . . . in the [United States]." Figueroa-Alvarado also testified that, upon his release, he planned "to move to Cancun . . . and work in the tourist business."

The district court adopted the facts in the PSR as well as the 16-level enhancement for a prior deportation following a crime of violence. The court found "that the advisory [G]uideline[s] range is clearly greater than necessary" because it "overstate[d] the defendant's criminal history." So the court "grant[ed] the motion for a downward departure under Section 4A1.3 of the [G]uidelines[, which] result[ed] in a one[-]level downward adjustment to Category V from Category VI." The court also "mov[ed] the sentence . . . one step down from [§] 4A1.3" because of "the defendant's history and characteristics and the nature and circumstances of th[e] crime." "In

particular, the [c]ourt . . . considered [Figueroa-Alvarado's] cultural assimilation in the United States";[2] "the childhood situation of the defendant"; and "the threats [in El Salvador] which . . . play[ed] a role in the defendant's return to the United States." The district court also noted that it had "considered a lighter sentence, but given the nature of the defendant's criminal history, the immigration history[,] and [the] repeat offenses that were pointed out . . . , [the court] did not feel that it would be a just sentence if the [c]ourt went beneath . . . 5[2] months."[3] The court sentenced Figueroa-Alvarado to 52 months' imprisonment.

## II. *Discussion*

On appeal, Figueroa-Alvarado argues that his 52-month sentence is substantively unreasonable because "the court gave inadequate weight to his significant cultural assimilation, the unique circumstances that precluded him from being given legal status in this country . . . , and the social circumstances that forced him to leave El Salvador." He also contends that the district court "gave too much weight to his criminal history," his "robbery conviction, and his immigration record."

We review the substantive reasonableness of a sentence for an abuse of discretion. *United States v. Feemster*, 572 F.3d 455, 461 (8th Cir. 2009) (en banc). "A sentencing court abuses its discretion if it fails to consider a relevant factor that should have received significant weight, gives significant weight to an improper or irrelevant factor, or considers only the appropriate factors but commits a clear error of judgment in weighing those factors." *United States v. Watson*, 480 F.3d 1175, 1177 (8th Cir.

---

[2]The PSR states that Figueroa-Alvarado was 18 when his family moved to the United States. According to his brief, Figueroa-Alvarado was "fifteen or so." Regardless, Figueroa-Alvarado, who is 37 years old, has lived in the United States for most of his adult life.

[3]During sentencing, the court misspoke and said that it was sentencing Figueroa-Alvarado to 54 months' imprisonment. Later, the court clarified that the sentence imposed was 52 months' imprisonment.

2007). "Where the district court in imposing a sentence makes 'an individualized assessment based on the facts presented,' addressing the defendant's proffered information in its consideration of the § 3553(a) factors, such sentence is not unreasonable." *United States v. Stults*, 575 F.3d 834, 849 (8th Cir. 2009) (quoting *Gall v. United States*, 552 U.S. 38, 50 (2007)). "The sentencing court has a range of choice, and its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law." *United States v. Jenners*, 537 F.3d 832, 835 (8th Cir. 2008) (quotation, alterations, and citation omitted).

Figueroa-Alvarado does not contend that the district court weighed an irrelevant factor or failed to consider a relevant factor. Instead, he argues that the court "commit[ted] a clear error of judgment in weighing those factors." *Watson*, 480 F.3d at 1177. We disagree. The district court heard and considered all of the mitigating circumstances that Figueroa-Alvarado identified in his sentencing memorandum and at sentencing. The court determined that a downward departure pursuant to U.S.S.G. § 4A1.3 was appropriate because the criminal history category "substantially over-represent[ed] the seriousness of [Figueroa-Alvarado's] criminal history." U.S.S.G. § 4A1.3(b)(1). The court varied the sentence downward even further because of "the defendant's history and characteristics and the nature and circumstances of this crime." Figueroa-Alvarado only argues that the variance was not substantial enough. "Where a district court has sentenced a defendant below the advisory [G]uidelines range, it is nearly inconceivable that the court abused its discretion in not varying downward still further." *United States v. McKanry*, 628 F.3d 1010, 1022 (8th Cir. 2011) (quotations, alteration, and citations omitted). Thus, the district court did not abuse its discretion by sentencing Figueroa-Alvarado to 52 months' imprisonment, well below the Guidelines range.

Figueroa-Alvarado also argues that we should remand the case for resentencing in light of *United States v. Jimenez-Perez*, in which we held that "the absence of a [F]ast-[T]rack program and the resulting difference in the [G]uidelines range should

not be *categorically excluded* as a sentencing consideration." 659 F.3d 704, 711 (8th Cir. 2011) (first and second alterations in original) (quotation and citation omitted). In that case, an illegal alien appealed the procedural reasonableness of his sentence for illegal reentry, arguing that the district court abused its discretion by refusing to consider whether the possible disparity between Fast-Track and non-Fast-Track jurisdictions warranted a downward variance. *Id.* at 706. "Our holding merely permit[ted] the sentencing judge to *consider* a facially obvious disparity created by [F]ast-[T]rack programs among the totality of § 3553(a) factors considered." *Id.* at 711 (second and third alterations in original) (quotation and citation omitted).

Unlike the appellant in *Jimenez-Perez*, Figueroa-Alvarado did not argue to the district court that disparities caused by the implementation of Fast-Track programs in some jurisdictions but not others warranted a downward variance. We recently held that a defendant convicted of illegal reentry was not entitled to resentencing in light of *Jimenez-Perez* because the defendant "did not argue at sentencing for a downward *variance* on [a Fast-Track disparity] ground" and thus "the district court committed no plain error in failing to comment *sua sponte* on that issue." *United States v. Elodio-Benitez,* 672 F.3d 584, 586 (8th Cir. 2012); *see also United States v. Paulino-Duarte*, 670 F.3d 842, 844 (8th Cir. 2012) (same); *see also United States v. Chavez-Ramirez*, 455 F. App'x 711, 714 (8th Cir. 2012) (unpublished per curiam) ("Although it could have varied downward on [the] basis [of a Fast-Track disparity], the district court's failure to do so was certainly not an abuse of its discretion."). Likewise, in this case, the district court did not plainly err by failing to raise sua sponte the issue of whether Figueroa-Alvarado was entitled to a downward variance for a potential Fast-Track disparity.

## III. *Conclusion*
For these reasons, we affirm the judgment of the district court.

_____