# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-2532

_____

United States of America,

    Appellee,

v.

Dwight Fowler,

    Appellant.

\*   Appeal From the United States
\*   District Court for the
\*   Eastern District of Missouri.

_____

Submitted: February 16, 2006
  Filed: April 17, 2006

_____

Before BYE, HEANEY, and MELLOY, Circuit Judges.

_____

HEANEY, Circuit Judge.

  Dwight Fowler pled guilty to five counts of bank robbery. The district court imposed a sentence of 151 months of imprisonment, to be followed by three years of supervised release. Fowler appeals. We hold that the government materially breached its plea agreement by advocating for the imposition of the career-offender enhancement, in spite of its promise to recommend that the district court calculate Fowler's sentence based on an offense level that did not include that enhancement. Accordingly, we reverse and remand.

# BACKGROUND

From the middle of May through late June of 2004, Fowler committed a series of bank robberies in St. Louis, Missouri.[1] He was charged by indictment filed September 2, 2004 with five counts of bank robbery, in violation 18 U.S.C. § 2113(a). Fowler and the government subsequently entered into plea negotiations, and on February 4, 2005, a binding plea agreement was memorialized and signed by Fowler, his attorney, and an Assistant United States Attorney. The agreement specifically contemplated a number of sentencing issues, including Fowler's estimated offense level. According to that portion of the agreement:

> [T]he parties have addressed United States Sentencing Guidelines applications to this case and have agreed to these recommendations. The parties agree that these recommendations fairly and accurately set forth the Guidelines calculations which the parties believe the Court should use in determining the defendant's sentence.
>
> The parties acknowledge that the Guidelines application recommendations set forth herein are the result of negotiations between the parties as to the Guidelines applications they address; that these negotiated recommendations . . . led to the guilty plea in this case; and that each party has a right to rely upon and hold the other party to the recommendations at the time of sentencing.

(Plea Agreement at 2-3.) The section of the agreement entitled "GUIDELINES RECOMMENDATIONS," detailed the version of the guidelines manual the parties recommended, the applicable base offense level for the conduct, and what

---

[1]On May 15, 2004, Fowler robbed U.S. Bank of $5,360. On May 29, 2004, he robbed Commerce Bank of $5,600. On June 18, 2004, Fowler robbed Central West End Bank of $3,217. On June 26, 2004, Fowler robbed yet another U.S. Bank of $2,156. Finally, Fowler robbed Bank of America of $3,470 on June 29. He was apprehended on July 3, 2004.

enhancements applied. (Id. at 6-7). This section concluded, "[b]ased on these recommendations, the parties estimate that the Total Offense Level is 25." (Id. at 7.) The district court accepted Fowler's guilty plea that same day, and made the plea agreement a part of the record.

The plea agreement did not recommend imposition of the career-offender enhancement. Nonetheless, the presentence report (PSR) did, based on convictions stemming from a series of armed robberies between October 22 and October 30, 1986. Fowler objected to the enhancement, which would have had the effect of raising both his criminal history category and his offense level. See USSG § 4B1.1. In his objection, Fowler argued that his prior convictions were "related," as that term is used in guidelines section 4A1.2(a)(2), and thus ought to be treated as one sentence. He also noted that the plea agreement between himself and the government did not recommend application of the career-offender enhancement. On the contrary, the agreement recommended an offense level that reflected no such enhancement.

In response to Fowler's objections, the government filed a memorandum with the court disputing that it had agreed the career-offender enhancement was inapplicable. The government devoted the majority of this memorandum to supporting the PSR's position that the enhancement should apply. Subsequently, Fowler filed a sentencing memorandum, asserting that the government was "foreclosed under the terms of the plea agreement from arguing in support of the Probation Office's recommendation for a higher offense level than the parties' recommended offense level of 25." (Def.'s Sentencing Mem. at 1.) Fowler argued at length in this memorandum that allowing such conduct would sanction the government's breach of its plea agreement. (See id. at 8-14.)

At the sentencing hearing, Fowler reasserted his objection to the career-offender enhancement. Again, the government argued for the enhancement. The district court accepted the government's argument, and overruled Fowler's objection.

The court then imposed a sentence of 151 months of imprisonment, to be followed by three years of supervised release. This appeal followed.

## ANALYSIS

Although Fowler raises a number of issues related to his sentence, we address only the dispositive issue of whether the government breached the plea agreement.[2] Generally speaking, our circuit views plea agreements as contracts, requiring the parties to fulfill their obligations under that contract. United States v. Andis, 333 F.3d 886, 890 (8th Cir. 2003) (en banc); United States v. Van Thournout, 100 F.3d 590, 594 (8th Cir. 1996). A plea agreement involves matters of constitutional significance, however, and the failure of the government to abide by the promises made therein violates a defendant's due process rights. Van Thournout, 100 F.3d at 594; see also United States v. McCray, 849 F.2d 304, 305 (8th Cir. 1988) (per curiam) ("Once a plea has been entered and it 'rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such a promise must be fulfilled.'" (quoting Santobello v. New York, 404 U.S. 257, 262 (1971))).

The plea agreement in this case clearly bound both the government and Fowler to recommend an adjusted offense level of 25 for his conduct. Instead, once the PSR calculated Fowler's adjusted offense level to be 29 due to application of the career-

_____

[2]We reject the government's contention that Fowler has not preserved this issue for review. Fowler raised the issue of the plea agreement in his objections to the PSR, and dedicated a good deal of his subsequent sentencing memorandum to his assertion that the government was in breach by advocating for a sentence different than as stated in the plea agreement. Thus, he has preserved it for review. Accord United States v. Piggie, 316 F.3d 789, 793 n.6 (8th Cir. 2003) (noting that a clearly stated basis for objections to sentencing calculations will preserve the issue for appellate review).

offender enhancement, the government followed suit. Both in its written and oral presentation to the court, the government actively advocated for an outcome different from the one it had promised Fowler. At oral argument, the government suggested it felt compelled to state its view because the district court asked for it at sentencing. First, we note that this assertion fails to explain the government's written response to Fowler's objections to the PSR, supporting the PSR's career-offender theory. The government has directed us to nothing in the record that required it to submit this response. Second, as to the sentencing hearing, the fact that the court asked for the government's position does not excuse the government for failing to abide by the plea agreement. See, e.g., United States v. Mendoza-Alvarez, 79 F.3d 96, 98 (8th Cir. 1996) (finding the government to have breached a plea agreement by stating its position on a guidelines issue when it promised to remain silent despite the court's request for the government's views); accord Van Thournout, 100 F.3d at 596 ("[P]lea agreements often impose duties on the government over and above those imposed by statute."). Thus, we are firmly convinced that the government's conduct violated the terms of its agreement.

Where, as here, the prosecutor has materially breached the plea agreement, the determination of the appropriate remedy is typically left to the discretion of the court. Santobello, 404 U.S. at 262-63. Among the options available to the court are permitting the defendant to be resentenced before a different judge consistent with the terms of the plea agreement (which, in this case, would require the government to fulfill its obligation to recommend a total offense level of 25), or permitting the defendant to withdraw his plea of guilty. Id. at 263; see also United States v. McGovern, 822 F.2d 739, 746 (8th Cir. 1987). Our court has, in some cases, determined which remedy is appropriate on its own accord. See, e.g., Margalli-Olvera v. INS, 43 F.3d 345, 354-55 (8th Cir. 1994) (remanding an order of deportation to the INS for specific performance of its agreement to remain silent on the issue of whether the petitioner was subject to deportation). We are not so required, however, United States v. Gomez, 271 F.3d 779, 782 (8th Cir. 2001), and

choose not to do so in this case, accord <u>Santobello</u>, 404 U.S. at 262-63 (remanding to state court for its determination of what remedy to apply to cure the prosecution's breach of a plea agreement).  Rather, we remand for the district court to determine, consistent with this opinion, the appropriate remedy to impose in the first instance.

_____