# United States Court of Appeals
## For the Eighth Circuit

_____

No. 14-2246
_____

United States of America

*Plaintiff - Appellee*

v.

Hector Tomas Galvez Quebedo

*Defendant - Appellant*
_____

Appeal from United States District Court
for the District of Nebraska - Omaha
_____

Submitted: February 13, 2015
Filed: May 29, 2015
_____

Before RILEY, Chief Judge, LOKEN and SMITH, Circuit Judges.
_____

SMITH, Circuit Judge.

Hector Tomas Galvez Quebedo ("Galvez") pleaded guilty pursuant to a Fast-Track plea agreement to illegal reentry following an aggravated-felony conviction, in violation of 8 U.S.C. § 1326(a) and (b)(2). In the plea agreement, Galvez waived the right to appeal his conviction and sentence. Finding that Galvez had previously been deported after a conviction for a felony that was a "crime of violence," the

district court[1] applied a 16-level enhancement under U.S.S.G. § 2L1.2(b)(1)(A)(ii), calculated an advisory Guidelines range of 37–46 months' imprisonment, and sentenced Galvez to 37 months' imprisonment. On appeal, Galvez argues that (1) the government breached the plea agreement by introducing evidence and argument that he was convicted of a felony crime of violence, and (2) the district court erred in applying the 16-level enhancement under § 2L1.2(b)(1)(A). We conclude that the government did not breach the plea agreement and that, as a result, the appeal waiver is valid and enforceable. Accordingly, we dismiss the appeal.

## I. *Background*

Galvez was charged in a single-count indictment with illegal reentry following an aggravated-felony conviction, in violation of 8 U.S.C. § 1326(a) and (b)(2). Galvez pleaded guilty pursuant to a Fast-Track plea agreement. *See* U.S.S.G. § 5K3.1 ("Upon motion of the Government, the court may depart downward not more than 4 levels pursuant to an early disposition program authorized by the Attorney General of the United States and the United States Attorney for the district in which the court resides."); *United States v. Jimenez-Perez*, 659 F.3d 704, 707 (8th Cir. 2011) ("Since the Commission's incorporation of § 5K3.1 into the Guidelines, the Attorney General has authorized such programs in several districts along the southwest and western borders of the United States, as well as in Nebraska and North Dakota . . . ." (quotation and citation omitted)).

The plea agreement set forth the factual basis for the plea, providing, in relevant part:

5.     Defendant is a convicted aggravated felon in that on September 12, 2006, in the Superior Court for the County of Los Angeles, State of California[,] he was sentenced upon conviction for

---

[1]The Honorable Laurie Smith Camp, Chief Judge, United States District Court for the District of Nebraska.

> assault with a deadly weapon, an aggravated felony, and *sentenced to 365 days in jail*.

(Emphasis added.) The factual basis gave no further details about this California conviction, such as whether the sentence was suspended, whether the state court imposed a term of probation, when the state court entered the judgment of conviction, or whether the state court declared the offense a "misdemeanor."

"The parties agree[d] that the facts in the 'factual basis' paragraph of this agreement, if any, are true . . . ." Additionally, "[t]he parties agree[d] that all information known by the office of United States Pretrial Service may be used by the Probation Office in submitting its presentence report, and may be disclosed to the court for purposes of sentencing."

Part V of the plea agreement set forth the parties' sentencing recommendations, providing, in relevant part:

> A.      *Sentencing Guideline Calculations*.
>
> Although the parties understand that the Guidelines are advisory and only one of the factors the court will consider under 18 U.S.C. § 3553(a) in imposing a sentence, the parties will jointly recommend the following Base Offense Level, Specific Offense Characteristics, Adjustments and Departures (if applicable). Unless otherwise stated, all agreements as to sentencing issues are made pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B).[2]

_____

[2]Rule 11(c)(1)(B) provides:

If the defendant pleads guilty or nolo contendere to either a charged offense or a lesser or related offense, the plea agreement may specify that an attorney for the government will . . . recommend, or agree not to oppose the defendant's request, that a particular sentence or sentencing

1. The parties agree that Base Offense Level 8 applies, pursuant to U.S.S.G. § 2L1.2(a).

2. If the defendant is found to be entitled to an offense level reduction under U.S.S.G. § 3E1.1(a) for acceptance of responsibility, the United States hereby moves that the court reduce the defendant's offense level by one additional level, pursuant to U.S.S.G. § 3E1.1(b), if that paragraph otherwise applies.

3. The parties agree that at the time of sentencing, the United States will make a non-binding recommendation to the court that the defendant should receive a 4[-]level downward departure, pursuant to U.S.S.G. § 5K3.1. For a defendant determined to fall within Criminal History Category VI or found to have a felony conviction for a "serious violent offense," as determined by the United States after review of the presentence investigation report, the parties agree that the United States will make a non-binding recommendation to the court that the defendant should receive a 2[-] level downward departure.

\* \* \*

C. *Adjustments, Departures & Reductions Under 18 U.S.C. § 3553.*

The parties agree that *defendant may not request or recommend additional downward adjustments, departures,* including criminal history departures under U.S.S.G. § 4A1.3, *and sentence reductions* under 18 U.S.C. § 3553, and that the United States may oppose any such

range is appropriate or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor does or does not apply (such a recommendation or request does not bind the court). . . .

downward adjustments, departures, and sentence reductions not set forth in Section V, paragraph A, above.

D.    *Criminal History*

The parties have no agreement concerning the defendant's Criminal History Category, except that if defendant is determined to be a Career Offender, the parties agree that the defendant is automatically a Criminal History Category VI pursuant to U.S.S.G. § 4B1.1(b).

(Emphasis added.)

The plea agreement contained no paragraph similar to ¶ C prohibiting the *government* from requesting or recommending additional upward adjustments, departures, or variances.

The plea agreement contained an appeal waiver in which Galvez "knowingly and expressly waive[d] any and all rights to appeal [his] conviction and sentence."

After the district court accepted Galvez's guilty plea, the probation office prepared a presentence report (PSR). The revised PSR calculated a base offense level of 8 but then determined that "a sixteen-level increase [was] warranted" to the offense level, explaining:

If an illegal alien found in the U.S. is found to have been convicted of a felony that is a crime of violence, a sixteen-level enhancement is warranted pursuant to U.S.S.G. § 2L1.2(b)(1)(A)(ii). On September 12, 2006, the defendant was sentenced in the Los Angeles (CA) Superior Court (Case #PA057087-01) to *three years probation* for assault with a deadly weapon. On January 5, 2012, *the term of probation was revoked* and the defendant was *sentenced to three years prison*. According to the court documents, the defendant was charged with an aggravated felony. Therefore, a sixteen-level increase is warranted.

(Emphases added.) Galvez received a three-level reduction for acceptance of responsibility, resulting in a total offense level of 21.

The PSR calculated a criminal history category of III. A total offense level of 21 combined with a criminal history category of III yielded an advisory Guidelines range of 46–57 months' imprisonment. The maximum term of imprisonment was 20 years. The PSR then assessed the impact of the plea agreement; because the probation "officer found that the felony conviction was for a 'serious violent offense,'" the PSR concluded that the government should "make a non-binding recommendation that the defendant receive a two-level downward adjustment to the total offense level." This downward adjustment resulted in a total offense level of 19 and a Guidelines range of 37–46 months' imprisonment.

Galvez objected to the 16-level enhancement in the PSR, arguing:

"This paragraph improperly applies a sixteen-offense-level enhancement under U.S.S.G. § 2L1.2(b)(1)(A)(ii). Section 2L1.2(b)(1)(A)(ii) only applies to prior 'felony' convictions, which application note 2 defines as an offense 'punishable by imprisonment for a term *exceeding* one year.' (Emphasis added). Defendant's prior conviction was under California Penal Code § 245(a)(1), a divisible statute, which allows for a sentence of imprisonment 'in county jail for not exceeding one year.' On September 12, 2006, the Superior Court of the State of California for the County of Los Angeles imposed a sentence of 365 days in the Los Angeles County Jail. (*See* Rule 16 Material, a[t] 63). The subsequent probation violation is not relevant to the application of § 2L1.2(b)(1[)](A)(ii). And the fact that Defendant is guilty of violating 8 U.S.C. § 1326(a) and (b)(2) does not impact the application of this calculation because 'aggravated felony' under § 1326(b)(2) involves offenses punishable by terms of imprisonment that could be *equal to* or exceeding one year."

The probation officer responded, in relevant part:

> Although the defendant's original sentence resulted in 365 days jail and three years probation, the charging documents note, "On or about August 1, 2006, in the County of Los Angeles, the crime of assault with a deadly weapon, in violation of penal code section 245(a)(1), *a felony*, was committed by Hector Tomas Galvez, who did willfully and unlawfully commit an assault upon Patricia Hernandez with a deadly weapon, to wit, a knife. NOTICE: The above offense is a *serious felony* within the meaning of Penal Code section 1192.7(c)." Furthermore, the defendant was sentenced to *3 years incarceration* from violating probation further underscoring this offense was a felony.

(Emphases added.)

The district court issued tentative findings as to Galvez's objection to application of the 16-level enhancement, stating that "*the government must be prepared to prove, by a preponderance of the evidence*, that the Defendant's prior offense was a felony within the meaning of section 2L1.2(b)(1)(A)(ii) of the Guidelines, in light of Eighth Circuit precedent." (Emphasis added.)

The government responded to Galvez's objections to the PSR. The government set forth the following time line of Galvez's prior conviction.

> *9-12-06*: Defendant pleads nolo contendre, via felony information to the felony of assault with a deadly weapon in violation of California Penal Code § 245(a)[(]1[)]. Immediately thereafter the court ordered that imposition of sentence be suspended and that the defendant be placed on probation for a period of three years with one of the conditions of probation being a jail term of 365 days to be served in the Los Angeles County Jail.

*3-16-07*: Probation violation hearing scheduled. Defendant did not appear and a bench warrant was issued.

*12-06-11*: Defendant arrested on bench warrant.

*1-05-12*: Defendant's probation is revoked and his *sentence* (emphasis added) is imposed, specifically a sentence of three years in state prison and credit for time served.

The government then argued that

both counsel for the government and (it is believed) the defendant, *mistakenly agreed* in the plea agreement that the defendant was *"sentenced"* to 365 days in jail. However, a diligent review of the court records determines that the defendant's *sentence*, in fact, did not take place until January 25, 2012, when he was *sentenced to three years in state prison*.

Under California law, where the offense is alternately a felony or misdemeanor (a wobbler), it is regarded as a felony for every purpose until judgment. *People v. Banks*, 53 Cal. 2d 370, 387.

(Emphases added.)

Following the government's response, Galvez filed an "Objection to the Government's Proffered Evidence, Motion to Strike Response and Index, and Motion for Specific Performance of the Plea Agreement" in which he argued that his "[c]ounsel did not 'mistakenly agree' to this language." According to Galvez, when the government asked his "counsel why Mr. Galvez's proposed language was needed, defense counsel replied that 'it might matter for sentencing purposes.'" Galvez maintained that he and the government "clearly and unambiguously stipulated that [his] 2006 California offense resulted in a sentence of '365 days in jail.'" He asserted that the government's response to his objection contradicting this stipulation

"amounts to a breach of the plea agreement and the government's submissions should be rejected and the Response and Index stricken from the record in this case." He moved for specific performance of the plea agreement. Galvez also objected to the use of his three-year sentence for violating his probation in connection with applying U.S.S.G. § 2L1.2(b)(1)(A)(ii).

An evidentiary hearing was held at which the government stated that the parties agreed that Galvez "was an aggravated felon" and confirmed that defense counsel asked the government "to put that language in there as to the sentenced to 365 days in jail." The government argued that whether Galvez "was sentenced to 10 days or 20 days is irrelevant . . . at least from the California perspective in applying the Penal Code, 17.1 of what they determine is misdemeanors and what isn't." According to the government, the California state court imposed a suspended sentence without ever stating that the offense "was to be considered a misdemeanor." The government contended that "the *actual judgment* . . . didn't occur until six years after he plead guilty . . . and was put on a probationary sentence"; therefore, the offense is "a felony under the guidelines" and "the 16-level enhancement should be imposed." (Emphasis added.) Thereafter, the district court overruled Galvez's objection to the government's argument and introduction of evidence.

The government introduced into evidence the following documents: (1) the Information charging Galvez with violating § 245 (as previously set forth in the probation officer's response to Galvez's objection); (2) the electronic docket from the California state court; (3) the state probation officer's report; and (4) the minute order from the California state court.

The docket sheet for the California state court shows that Galvez was arraigned on September 12, 2006, at which time he waived his arraignment, reading of the information, his right to confrontation/cross-examination, his right to subpoena witnesses, and his right against self-incrimination. Galvez, with the court's approval,

pleaded "nolo contendere to Count 02[,] a violation of Section 245(A)(1)." The court found Galvez "guilty." Galvez "waive[d] arraignment for judgment and state[d] there is no legal cause why sentence should not be pronounced." The court ordered the following judgment:

> Imposition of sentence suspended[.] Defendant placed on formal probation for a period of 003 years under the following terms and conditions: Serve 365 days in Los Angeles County Jail less credit for 62 days. Defendant given total credit for 62 days in custody 42 days actual custody and 20 days good time/work time fortwith plus $20.00 court security assessment (pursuant to 1465.8(A)(1) P.C.)

(All caps omitted; formatting altered.)

On December 19, 2011, the state probation officer filed his report. Under "Record Bureau Clearance," the probation officer wrote, "Probation violation in lieu of filed, Count 02: 245(A)(1) PC (Force/ADW Not Firearm:[ ]GBI Likely)—Warrant—XNV PA057087-01 . . . ." (All caps omitted.) The probation officer indicated that Galvez had not reported for probation supervision since the grant date and had not made any payments toward his financial obligations. According to the report, "[p]robation was originally granted on 09/12/2006." (All caps omitted). The probation officer recommended that the court find Galvez "in violation of probation, probation remain revoked[,] and sentence imposed." (All caps omitted).

Thereafter, a violation hearing was held on January 5, 2012. At the hearing, the California state court advised Galvez of his rights to a hearing on the probation violation, and Galvez waived his rights to a revocation hearing. Galvez stipulated to a violation of probation, and the court found that Galvez was in violation of probation. The court ordered as follows, in relevant part:

Probation to remain revoked[.] Sentence is imposed as follows[:]

As to Count (02): Serve 003 years in any state prison[.] Court selects the mid term of 003 years as to Count 02.

(All caps omitted; formatting altered.)

After hearing all argument and evidence, the district court overruled Galvez's objection to application of the 16-level enhancement, explaining:

> And while I understand that under the plea agreement there's a reference to the 365 days, the fact is he did end up with three years in prison, a sentence of three years in prison and it was for a felony that was a crime of violence.
>
> And I also go back to the original logic behind the guidelines, that they're supposed to provide some consistency nationwide. And your client was found guilty of a crime of violence that carried a potential penalty of one year or more in prison —more than one year in prison.

The government moved for a two-level downward departure based on the Fast-Track plea agreement, and the district court granted the motion, thereby reducing the total offense level from 21 to 19. With a criminal history category of III, Galvez's resulting Guidelines range was 37–46 months' imprisonment. The district court sentenced Galvez to 37 months' imprisonment and advised Galvez that he had waived his right to appeal as part of the plea agreement.

## II. *Discussion*

Galvez argues that the government breached the plea agreement in arguing for a 16-level sentencing enhancement under U.S.S.G. § 2L1.2(b)(1)(A)(ii) by offering evidence and argument that contradicted the factual stipulation in the plea agreement that his 2006 California conviction resulted in a "sentence[] of 365 days in jail."

According to Galvez, the district court erroneously failed to exclude, and relied on, the government's improperly offered evidence and argument at sentencing. Galvez contends that because the government breached the plea agreement, he is entitled to proceed with this appeal despite the appeal waiver and to request specific performance of the plea agreement and resentencing by a different district judge. Galvez also argues that the district court procedurally erred in concluding that Galvez's 2006 California conviction was a felony crime of violence and, as a result, erred in imposing the 16-level enhancement under § 2L1.2(b)(1)(A)(ii). According to Galvez, because a sentence of 365 days in jail is a misdemeanor for the purposes of § 2L1.2(b)(1)(A)(ii), the enhancement does not apply and the Guidelines range was improperly calculated. Additionally, he asserts that the district court erred in including time for Galvez's post-deportation probation revocation in calculating the time "punishable" under the California statute.

"We review questions regarding the interpretation and enforcement of plea agreements de novo." *United States v. Noriega*, 760 F.3d 908, 910 (8th Cir. 2014) (quotation and citation omitted). If the government breached the plea agreement, then Galvez would be entitled to proceed with this appeal challenging application of the enhancement despite the appellate waiver. *See, e.g.*, *United States v. Johnson*, 512 F. App'x 648, 654 (8th Cir. 2013) ("'When the government fails to fulfill the terms of a plea agreement, an unsatisfied defendant may seek specific performance or may seek to withdraw his plea.'" (quoting *United States v. Kelly*, 18 F.3d 612, 615–16 (8th Cir. 1994)); *United States v. Sayles*, 754 F.3d 564, 568 (8th Cir. 2014) ("Maurice waived his right to appeal as part of his plea agreement; however, because the government breached the plea agreement, the appeals waiver is unenforceable." (citaiton omitted)).

"[I]n determining whether the government has fulfilled its obligations under a plea agreement, we look to the agreement's provisions." *United States v. Kramer*, 12 F.3d 130, 131 (8th Cir. 1993) (citation omitted). The government does not breach

a plea agreement by advocating for a particular enhancement in a case in which that enhancement "was an issue that [was] not . . . agreed to or specifically listed in the [plea] agreement." *Noriega*, 760 F.3d at 912 (quotation and citation omitted); *see also id*. at 911 ("Because the plea agreement contained no provision limiting the scope of relevant conduct or defining Noriega's role in the offense and because the Government unequivocally stood by its stipulation to a base offense level of 36, we conclude that the Government did not breach the plea agreement by introducing the additional evidence to establish Noriega's role under USSG § 3B1.1(a)." (citation omitted)).

By contrast, we have held that the government breached a plea agreement by actively arguing for an enhancement in a case in which the plea agreement specifically stipulated to an offense level that did not account for such enhancement. *United States v. Fowler*, 445 F.3d 1035, 1038 (8th Cir. 2006) ("The plea agreement in this case clearly bound both the government and Fowler to recommend an adjusted offense level of 25 for his conduct. Instead, once the PSR calculated Fowler's adjusted offense level to be 29 due to application of the career-offender enhancement, the government followed suit."). And, "[w]e have previously held that the introduction of evidence *contrary to* a specific stipulation amounts to a breach of the plea agreement." *United States v. E.V.*, 500 F.3d 747, 753 (8th Cir. 2007) (emphasis added) ("[T]he parties' specific agreement in this case that the offense characteristics of section 2D1.1(b) did not apply precluded the government from introducing evidence to the contrary, either as purported rebuttal evidence or pursuant to the more general agreement that the parties could seek departures from the applicable guideline range.").

In summary, we must distinguish cases in which, for example, "the Government breached a plea agreement when it stipulated to a drug quantity and corresponding base offense level and then initiated an effort at the sentencing hearing to obtain a higher drug quantity and base offense level" in direct contravention of the

stipulation, from cases in which, for example, "the Government made clear at sentencing that it intended to honor the stipulated base offense level . . . and then sought a[n] . . . enhancement for which there was no such stipulation." *Noriega*, 760 F.3d at 911–12 (citing *United States v. Lara*, 690 F.3d 1079, 1081–83 (8th Cir. 2012); *United States v. DeWitt*, 366 F.3d 667, 671–72 (8th Cir. 2004)).

Here, the plea agreement set forth the parties' agreement "that Base Offense Level 8 applies, pursuant to U.S.S.G. § 2L1.2(a)," and the government honored this stipulated base offense level at sentencing. Likewise, the government honored the plea agreement's provision to recommend only a two-level departure pursuant to U.S.S.G. § 5K3.1 in the event it determined after review of the PSR that Galvez's prior conviction was "a felony conviction for a 'serious violent offense.'" But the plea agreement *did not* prohibit the government from seeking sentencing enhancements for which there was no stipulation, such as a sentencing enhancement under U.S.S.G. § 2L1.2(b)(1)(A)(ii). While ¶ C of the plea agreement prohibited Galvez from "request[ing] or recommend[ing] additional downward adjustments, departures, . . . and sentence reductions," the plea agreement contained no paragraph prohibiting the *government* from requesting or recommending additional upward adjustments, departures, or variances.

Furthermore, the plea agreement provided that the probation office could use "all information known" in the PSR and disclose such information "to the court for sentencing purposes." The PSR disclosed that Galvez "was sentenced in the Los Angeles (CA) Superior Court . . . to three years probation for assault with a deadly weapon" but subsequently had that term of probation revoked and was "sentenced to three years [in] prison"; as a result, the PSR recommended application of the 16-level enhancement under § 2L1.2(b)(1)(A)(ii) for a felony crime of violence. A review of the plea agreement reveals that it "did not obligate the government to object to recommendations made in the presentence report." *United States v. Has No Horses*, 261 F.3d 744, 750 (8th Cir. 2001).

-14-

Thus, the plea agreement did not preclude the government from arguing for the application of a 16-level enhancement under § 2L1.2(b)(1)(A)(ii). But Galvez's argument is that the *factual* stipulation that he was "sentenced to 365 days in jail" for his California conviction of assault with a deadly weapon—which he characterizes as a misdemeanor—effectively precluded the government from arguing or producing evidence that he committed a *felony* crime of violence under § 2L1.2(b)(1)(A)(ii) because his sentence was exactly one year. This section provides that "[i]f the defendant previously was deported . . . after . . . a conviction for a felony that is . . . a crime of violence . . . increase by 16 levels." U.S.S.G. § 2L1.2(b)(1)(A)(ii). "For purposes of subsection (b)(1)(A), (B), and (D), 'felony' means any federal, state, or local offense punishable by imprisonment for a *term exceeding one year*." *Id.*, cmt. 2. (emphasis added).

Galvez's conviction for assault with a deadly weapon in violation of California Penal Code § 245(a) is a "wobbler" offense. The "violation was punishable by 'imprisonment in the state prison for two, three, or four years, or in a county jail for not exceeding one year, or by a fine not exceeding ten thousand dollars ($10,000), or by both the fine and imprisonment.'" *United States v. Adams*, 716 F.3d 1066, 1070 (8th Cir. 2013) (quoting Cal. Penal Code § 245(a)(1)). Under California law, "[a]n offense punishable either by imprisonment in the state prison or by a county jail sentence is said to 'wobble' between the two punishments and hence is frequently called a 'wobbler' offense." *Id.* (quotations and citations omitted).

Under California Penal Code § 17(b),

> [w]hen a crime is punishable, in the discretion of the court,
> either by imprisonment in the state prison or imprisonment
> in a county jail . . . it is a misdemeanor for all purposes
> under the following circumstances:

(1) After a *judgment* imposing a punishment other than imprisonment in the state prison or imprisonment in a county jail under the provisions of subdivision (h) of Section 1170 [or]

\* \* \*

(3) When the court grants probation to a defendant without imposition of sentence and at the time of granting probation, or on application of the defendant or probation officer thereafter, *the court declares the offense to be a misdemeanor*.

(Emphases added.)

"Under California law, where the offense is alternatively a felony or misdemeanor, it is regarded as a felony for every purpose until judgment." [*United States v.*] Robinson, 967 F.2d [287,] 293 [(9th Cir. 1992)]. In *Robinson*, the Ninth Circuit held that where a court granted probation and suspended imposition of a sentence after conviction, imposed a nine month jail term, never entering judgment and never declaring the offense to be a misdemeanor, the prior conviction (battery on a police officer) was a felony and California Penal Code §§ 17(b)(1) and (3) did not apply. *Id.* The Ninth Circuit found that California Penal Code § 17(b)(1) did not apply because no judgment was rendered and § 17(b)(3) did not apply because the convictions were never declared to be misdemeanors. *Id*. The Ninth Circuit has also stated:

Clearly, "[a]n order granting probation is not a judgment." *People v. Smith*, 195 Cal. App. 2d 735, 737, 16 Cal. Rptr. 12 (1961). Furthermore, when a sentencing court grants probation after a conviction, it may suspend the imposition of sentence, in which case no judgment of conviction is rendered, or it may impose sentence and order its execution to be stayed. In the latter case only, a judgment of

-16-

> conviction is rendered. *People v. Arguello*, 59 Cal. 2d 475,
> 476, 30 Cal. Rptr. 333, 381 P.2d 5 (1963).

> *Id.*

*Adams*, 716 F.3d at 1070–71.

Thus, under California law, a violation of § 245 is "regarded as a felony for every purpose until judgment." *Robinson*, 967 F.2d at 293. But "[a]n order granting probation is not a judgment." *Smith*, 195 Cal. App. 2d at 737. Nor is a "judgment of conviction . . . rendered" when the court grants probation after a conviction and "suspend[s] the imposition of sentence." *Arguello*, 59 Cal. 2d 475, 476. Furthermore, California § 17(b)(3) is inapplicable unless "the court declares the offense to be a misdemeanor."

In the present case, the parties stipulated only that Galvez was "sentenced to 365 days in jail" for violating California Penal Code § 245. The factual basis of the plea agreement gave no further details about this California conviction, such as whether the sentence was suspended, whether the state court imposed a term of probation, when the state court entered a judgment of conviction, or whether the state court declared the offense a "misdemeanor"—all facts necessary to determine whether Galvez's conviction was a misdemeanor or felony. At sentencing, the government submitted (1) the Information charging Galvez with violating § 245, (2) the electronic docket from the California state court, (3) the state probation officer's report, and (4) the minute order from the California state court. None of these documents *contradicted* the parties' stipulation that Galvez was "sentenced to 365 days in jail." Instead, the documents confirmed Galvez's 365-day sentence but also provided *additional* detail about the imposition of this "sentence" necessary for determining whether the conviction was a misdemeanor or felony under California law, and correspondingly, for purposes of § 2L1.2(b)(1)(A)(ii). Specifically, these documents explained that the California state court imposed a "suspended" sentence, placed

Galvez on "formal probation," and ordered Galvez to "serve 365 days in Los Angeles County Jail." After Galvez violated his probation, the California state court revoked his probation and "imposed" a three-year prison sentence. Thus, the government's evidence offered in support of the enhancement under § 2L1.2(b)(1)(A)(ii) did not *contradict* the factual stipulation of the plea agreement; instead, such evidence further explained the factual stipulation. *Cf. E.V.*, 500 F.3d at 753 ("We have previously held that the introduction of evidence *contrary to* a specific stipulation amounts to a breach of the plea agreement." (emphasis added)).

> Galvez also points to the government's argument that

> both counsel for the government and (it is believed) the defendant, mistakenly agreed in the plea agreement that the defendant was "sentenced" to 365 days in jail. However, a diligent review of the court records determines that the defendant's sentence, in fact, did not take place until January 25, 2012, when he was sentenced to three years in state prison.

At sentencing, the government maintained that it did not believe that Galvez "was sentenced, per se, . . . in 2006 when the California court put him on probation." According to the government, Galvez's "actual conviction judgment . . . was six years later when he eventually violated probation, was picked up after three or four years; and that the sentencing, in fact, occurred at that particular time when he was ultimately sentenced to state prison for three years." The government's argument must be viewed in conjunction with the evidence that it offered in support of the enhancement. When viewed in context, the government was arguing that while Galvez did serve 365 days in jail in September 2006, this sentence did not constitute a "judgment" because, as a matter of California law, an order granting probation is not a judgment, and no judgment of conviction is rendered when a court imposes a suspended sentence. As a result, Galvez's actual judgment of conviction was not rendered until the California state court sentenced him to three years'

imprisonment—a term exceeding one year under § 2L1.2(b)(1)(A)(ii)—following his probation violation. Thus, California Penal Code § 17(b)(1) did not apply, and Galvez's conviction was a felony, not a misdemeanor. Furthermore, the government's argument was that because the California state trial court never declared the conviction to be a misdemeanor, California Penal Code § 17(b)(3) did not apply.

In summary, we find nothing in the government's evidence or argument that contradicted the parties' factual stipulation or otherwise breached the plea agreement. The government was free to argue for an enhancement under § 2L1.2(b)(1)(A)(ii) and present evidence in support of that enhancement.

## III. *Conclusion*

Because the government did not breach the plea agreement, the appeal waiver is valid and enforceable; therefore, we dismiss the appeal.

_____