# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-3657

_____

United States of America

*Plaintiff - Appellee*

v.

Matthew St. Pierre

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of South Dakota - Aberdeen

_____

Submitted: October 15, 2018
Filed: January 11, 2019

_____

Before SHEPHERD, KELLY, and STRAS, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Matthew St. Pierre pled guilty to aiding and abetting second-degree murder in violation of 18 U.S.C. §§ 2, 1111, and 1153. Pursuant to a plea agreement, the government recommended a United States Sentencing Guidelines range of 292-365

months imprisonment. The district court[1] rejected the plea agreement's recommended sentencing range, adopted a higher range, and sentenced St. Pierre to 480 months imprisonment. St. Pierre appeals, contending the government breached the plea agreement and the district court committed procedural and substantive error in calculating his sentence. Having jurisdiction pursuant to 18 U.S.C. § 3742 and 28 U.S.C. § 1291, we conclude the government did not breach the plea agreement. Therefore, the appeal waiver is enforceable with respect to the other claims raised here, and we dismiss the appeal.

G.K.I.W., a five-year-old girl, lived with her mother, Desarae Makes Him First, and St. Pierre, her mother's domestic partner, on the Standing Rock Sioux Indian Reservation. On Wednesday, October 5, 2016, staff at G.K.I.W.'s elementary school noticed the child had bruising on her face, including her cheek and forehead. When asked what happened, G.K.I.W. said St. Pierre hit her while he was drunk. She began crying when staff asked if she had been hurt anywhere else. A school nurse found additional bruises on G.K.I.W.'s collarbone, and staff alerted the South Dakota Department of Social Services Child Protection Services (DSS) and the Standing Rock Sioux Tribe Child Protection Services (SRST-CPS). A DSS social worker examined G.K.I.W. and found even more bruising on the child's stomach. Though SRST-CPS said they would respond to the claim, they did not do so before G.K.I.W. returned home.

The next day, school officials tried to contact SRST-CPS multiple times, but SRST-CPS did not return their calls. Eventually, G.K.I.W.'s school called the Fort Yates Police Department, but once again, no one responded to the call. The school officials were particularly concerned because there would be no school the following day (Friday) or the following Monday, and they feared for G.K.I.W.'s safety at home

---

[1]The Honorable Charles B. Kornmann, United States District Judge for the District of South Dakota.

that long without an investigation. Despite these concerns, G.K.I.W. was allowed to return home.

When school resumed the following Tuesday, October 11, G.K.I.W. was absent. Her sister said she was sick. School officials again called SRST-CPS and again heard nothing, with the call going directly to voicemail. They also left a message for DSS. Finally, G.K.I.W.'s school sent its own school resource officer (SRO) to conduct a welfare check at G.K.I.W.'s home. The SRO went to Makes Him First's address, but Makes Him First refused to let the SRO see G.K.I.W. She said the child became bruised by fighting with her sister and that G.K.I.W. was asleep but would be in school the next day.

However, around 1:30 the following morning, Makes Him First brought G.K.I.W. to the hospital. The child was not breathing and was cold to the touch; bruises covered most of her body, including large bruises on her chest and thigh. Despite attempts to resuscitate G.K.I.W., she died shortly thereafter. Investigators later determined the cause of death to be a tear in the child's abdomen caused by abuse to her torso.

Makes Him First eventually admitted to investigators that she had abused G.K.I.W. by hitting her with a shoe and punching her. She initially did not implicate St. Pierre, and St. Pierre denied abusing the child. However, after being indicted for the child's death, Makes Him First described how St. Pierre abused G.K.I.W. in the days leading up to her death. Makes Him First said that for three nights in a row—Sunday, Monday, and Tuesday—St. Pierre entered G.K.I.W.'s room late at night and abused the child. He accused G.K.I.W. of not sleeping before shining a light in her face and then physically assaulting her by pulling her hair, pushing her chest, striking her thigh, and grabbing her neck. G.K.I.W. found the injuries to her chest particularly painful, as St. Pierre had already left bruises there by abusing her throughout the week. Makes Him First admitted that on Tuesday, she and St. Pierre

kept G.K.I.W. home from school because they feared getting into trouble if school staff noticed that G.K.I.W. was covered in bruises. She stated the abuse escalated throughout the week; by Tuesday night, St. Pierre was picking G.K.I.W. up by the neck and choking her repeatedly until she blacked out. Makes Him First said she began crying and begging St. Pierre to stop hurting the child, but he ignored her. At one point, St. Pierre held G.K.I.W. by the neck and shook her so severely that when he put her back down, she could not stand. G.K.I.W.'s speech then became unintelligible, and she began to behave strangely. Makes Him First asked to give the child a bath. St. Pierre poured water onto the child's face, and Makes Him First demanded they go to the hospital. G.K.I.W. turned pale, and her breathing shallowed. She began to foam at the mouth. Makes Him First attempted to assist the child's breathing while St. Pierre started the car. On the way to the hospital, St. Pierre told Makes Him First that he would not go to prison for her child, and she needed to come up with a lie to explain the child's injuries. Makes Him First explained she initially lied to investigators out of her fear of St. Pierre.

When investigators interviewed other household members, they heard repeatedly that St. Pierre had a violent anger problem. In the days before the murder, one person asked St. Pierre and Makes Him First about G.K.I.W.'s frequent crying, and the couple said the child simply woke up that way. Another person had been told that St. Pierre had once pushed G.K.I.W. into a wall. On the day G.K.I.W. died, a witness stated St. Pierre and Makes Him First acted strangely, appearing more nervous than sad and whispering to one another. In November 2016, the government indicted St. Pierre as Makes Him First's co-defendant.

St. Pierre eventually pled guilty to aiding and abetting second-degree murder. The plea agreement recommended a sentencing range of 292-365 months imprisonment. The parties agreed the base offense level was 38 but agreed to a two-point enhancement for a vulnerable victim pursuant to United States Sentencing Commission, Guidelines Manual, § 3A1.1(b) and a three-point reduction for timely

-4-

acceptance of responsibility pursuant to USSG § 3E1.1, resulting in a total offense level of 37. They also agreed that St. Pierre's criminal history category was IV. St. Pierre waived his right to appeal on most grounds. The plea agreement expressly stated that its recommendations were not binding on the district court, and if the district court rejected its proposals, St. Pierre could not withdraw his plea. At his change-of-plea hearing, St. Pierre stated he understood that the court would determine his actual advisory Guidelines range and that it was not bound by the plea agreement's recommendation. He further said that he understood his appellate waiver would cover the majority of grounds on which he could raise an appeal.

The presentence investigation report (PSR) prepared for St. Pierre's sentencing hearing recommended a sentencing range of 360 months to life imprisonment. In arriving at a total offense level of 41, the PSR included an enhancement for obstruction of justice pursuant to USSG § 3C1.1, to which St. Pierre objected. The probation officer who wrote the report filed an amended PSR and addendum in response to St. Pierre's objections. The addendum defended the obstruction of justice enhancement by noting Makes Him First testified that St. Pierre told her to lie about what happened to G.K.I.W. At the sentencing hearing, the government stated that it "adopt[ed]" the amended report and addendum but that it was "not asking the Court to go above" the stipulated sentencing range. As outlined in the plea agreement, the government asked the district court to grant St. Pierre a three-point reduction for timely acceptance of responsibility and joined in St. Pierre's motion for a downward departure or variance to reach the plea agreement's sentencing range.

The district court declined to follow the plea agreement's recommendations. It found that St. Pierre's acceptance of responsibility was not timely and agreed with the PSR addendum that an obstruction of justice enhancement was appropriate. The district court stated that the prolonged and severe nature of the abuse against G.K.I.W. made this case unlike any it had seen. It adopted the PSR's recommended sentencing range and sentenced St. Pierre to 480 months imprisonment. St. Pierre

appeals, contending the government breached the plea agreement by adopting the PSR addendum and that the district court committed procedural and substantive error in deciding his sentence.

We first determine whether the government breached the plea agreement such that St. Pierre may appeal. "We review questions regarding the interpretation and enforcement of plea agreements *de novo*." United States v. Mosley, 505 F.3d 804, 808 (8th Cir. 2007). "If the government breached the plea agreement," St. Pierre may proceed with his appeal "despite the appellate waiver." United States v. Quebedo, 788 F.3d 768, 775 (8th Cir. 2015). "[I]n determining whether the government has fulfilled its obligations under a plea agreement, we look to the agreement's provisions." United States v. Kramer, 12 F.3d 130, 131 (8th Cir. 1993) (citing United States v. Coleman, 895 F.2d 501, 505 (8th Cir. 1990)). If the government "actively advocate[s] for an outcome different from the one it had promised" to seek, it breaches the plea agreement. United States v. Fowler, 445 F.3d 1035, 1038 (8th Cir. 2006). In United States v. Thompson, the parties' plea agreement applied a specific Guidelines section for possession of a firearm, but after the PSR used the more severe felonious assault section, the prosecutor accepted its recommendation out of "an obligation to advise the Court of what the facts are." 403 F.3d 1037, 1039 (8th Cir. 2005). Without being prompted by the court, the prosecutor argued that the facts to which Thompson had stipulated supported felonious assault. Id. at 1038, 1040. The court held that the prosecutor had, "[i]n essence," argued against the plea agreement provision and therefore breached the agreement. Id. at 1040-41.

In St. Pierre's plea agreement, the government agreed to recommend a sentence of 292-365 months imprisonment. The agreement made no mention of an obstruction of justice enhancement and did not require that the government join in any of St. Pierre's objections to the PSR. At sentencing, the government repeatedly requested a sentence within the agreed-upon range. And, unlike in Thompson, when St. Pierre objected to the obstruction-of-justice enhancement in the PSR, the government did

not argue that the facts supported the enhancement; it merely said "there is evidence there" and immediately emphasized its request for a downward departure or variance to reach the agreed-upon sentencing range. To be sure, as St. Pierre suggests, the government could have simply not addressed the obstruction enhancement at all, and the government's statement that it "adopt[ed]" the amended PSR and addendum seems, on its face, to indicate agreement with it. However, viewed in context, the government's chosen course did not constitute breach. Rather, the government advocated for the 292-365 month sentencing range outlined in the plea agreement no less than six times at sentencing, including in its discussion of the PSR addendum. Because the government promised to recommend a sentence within the agreed-upon Guidelines range and consistently did so, it did not breach the plea agreement.

Having found the plea agreement enforceable, we turn to whether St. Pierre waived his right to appeal. "Whether a valid waiver of appellate rights occurred is a question of law that we will review de novo." United States v. Sisco, 576 F.3d 791, 795 (8th Cir. 2009). "When reviewing a purported waiver, we must confirm that the appeal falls within the scope of the waiver and that both the waiver and the plea agreement were entered into knowingly and voluntarily." United States v. Andis, 333 F.3d 886, 889-90 (8th Cir. 2003) (en banc). We will not "enforce an otherwise valid waiver if to do so would result in a miscarriage of justice." Id. at 891.

First, St. Pierre's appeal must fall within the scope of his waiver. Under the plea agreement, St. Pierre waived "his right to appeal any non-jurisdictional issues." The parties excluded from the waiver instances in which the district court departed or varied upward. Because St. Pierre's appeal does not raise a jurisdictional issue and the district court did not impose an upward departure or upward variance from the 360 months to life imprisonment sentencing range it adopted, this appeal falls within the scope of the waiver.

-7-

Second, the waiver and plea agreement must have been entered into knowingly and voluntarily. "[A] district court can help ensure that a plea agreement and corresponding waiver are entered into knowingly and voluntarily [by] properly question[ing] a defendant about his or her decision to enter that agreement and waive the right to appeal." Id. at 890-91. Here, the district court did exactly that. At St. Pierre's change-of-plea hearing, it cautioned, "[I]f you don't like what I do in your case . . ., you have no place to go. You cannot go to the Court of Appeals in St. Louis, Missouri, and you cannot go to the United States Supreme Court." While noting that St. Pierre could still appeal a sentence that varied or departed upward, the district court emphasized that that was an "exception" to St. Pierre's broad appellate waiver, saying, "[I]f I make a mistake in your case and you don't like it, you are stuck with it. And so you are giving up very valuable rights. Do you understand all of that, sir?" St. Pierre responded, "Yes, sir." The district court then verified that no one had threatened or coerced St. Pierre into pleading guilty and that St. Pierre would enter his plea "voluntarily on [his] part and of [his] own free will." Thus, the record indicates that St. Pierre entered into the plea agreement knowingly and voluntarily.

Finally, enforcing the waiver must not result in a miscarriage of justice. "[T]his exception is a narrow one," principally allowing the appeal of illegal sentences that are greater than the maximum statutory penalty. Id. at 891-92. In contrast, "an allegation that the sentencing judge misapplied the Sentencing Guidelines or abused his or her discretion is not subject to appeal in the face of a valid appeal waiver." Id. at 892. Because St. Pierre's appeal is grounded in alleged errors by the district court in applying the Sentencing Guidelines, no miscarriage of justice occurs in enforcing the appellate waiver. Therefore, the waiver is valid and enforceable.

Even if we considered the merits of St. Pierre's arguments alleging procedural and substantive error, we would affirm the sentence of the district court. See United States v. Cook, 252 F. App'x 114, 115 (8th Cir. 2007) (per curiam). When reviewing the sentence of a district court, we first affirm the absence of significant procedural

error, such as failing to consider the 18 U.S.C. § 3553(a) factors. Gall v. United States, 552 U.S. 38, 51 (2007). This does not require "'robotic incantations' that each statutory factor has been considered." United States v. Lamoreaux, 422 F.3d 750, 756 (8th Cir. 2005) (quoting United States v. Crosby, 397 F.3d 103, 113 (2d Cir. 2005)). Rather, "all that is generally required to satisfy the appellate court is evidence that the district court was aware of the relevant factors." United States v. Perkins, 526 F.3d 1107, 1110 (8th Cir. 2008).

St. Pierre contends that the district court committed procedural error by failing to consider the disparity between his sentence and the sentences imposed on similar defendants. However, the district court explicitly discussed similar cases cited by St. Pierre and described St. Pierre's case as "far from" those examples, saying, "I have never seen such a case as this in the 22-plus years I have sat on the bench, the cruelty day in and day out." Because the district court appropriately considered the sentencing factors, it did not commit significant procedural error.

After confirming the absence of procedural error, we examine the substantive reasonableness of the sentence, using a "deferential abuse-of-discretion standard." Gall, 552 U.S. at 41, 51. A district court abuses its discretion only if it "fails to consider a relevant factor that should have received significant weight;" "gives significant weight to an improper or irrelevant factor;" or "commits a clear error of judgment" in weighing the proper factors. United States v. Feemster, 572 F.3d 455, 461 (8th Cir. 2009) (en banc) (quoting United States v. Kane, 552 F.3d 748, 752 (8th Cir. 2009)). A sentence within the Guidelines range is presumptively reasonable, and "it will be the unusual case when we reverse a district court sentence—whether within, above, or below the applicable Guidelines range—as substantively unreasonable." Id. at 464 (quoting United States v. Gardellini, 545 F.3d 1089, 1090 (D.C. Cir. 2008)). The "district court has wide latitude to weigh the § 3553(a) factors in each case and assign some factors greater weight than others in determining an appropriate sentence." United States v. Bridges, 569 F.3d 374, 379 (8th Cir. 2009).

Here, St. Pierre's sentence was within the Guidelines range calculated by the district court and is presumptively reasonable. The district court clearly considered sentence disparity, and it had "wide latitude" to assign great weight to the circumstances of the case and to emphasize the abuse G.K.I.W. had suffered. Id. at 379. Therefore, the district court did not abuse its discretion in imposing St. Pierre's sentence, and we would affirm the district court's judgment even absent the appellate waiver.

Because the government did not breach the plea agreement and St. Pierre waived his ability to appeal on these grounds, we dismiss the appeal.

STRAS, Circuit Judge, concurring in part and concurring in the judgment.

I agree with the court's explanation of why St. Pierre's appeal waiver requires us to dismiss his appeal, but I would end the opinion there. Once we dismiss St. Pierre's appeal, there is nothing left to do. To proceed further and address the underlying merits, as the court does, both defeats the appeal waiver and is at odds with the judgment, which is to dismiss rather than affirm. Accordingly, I join the court's opinion except its unnecessary discussion of the merits of St. Pierre's appeal.

_____