# United States Court of Appeals
### For the Eighth Circuit

_____

No. 23-1627
_____

United States of America

*Plaintiff - Appellee*

v.

Alexzander Michael Carneal, also known as Jesicam, also known as Jesicashea,
also known as Alexander Michael Carneal

*Defendant - Appellant*
_____

Appeal from United States District Court
for the District of Minnesota
_____

Submitted: October 20, 2023
Filed: January 25, 2024
_____

Before BENTON, SHEPHERD, and KELLY, Circuit Judges.
_____

KELLY, Circuit Judge.

Alexzander Michael Carneal pleaded guilty to distribution of child pornography. He appeals the district court's[1] restitution order.

---

[1]The Honorable Susan Richard Nelson, United States District Judge for the District of Minnesota.

# I.

Carneal was indicted on one count of sexual exploitation of children, in violation of 18 U.S.C. §§ 2251(a) and 2251(e), and two counts of distribution of child pornography, in violation of 18 U.S.C. §§ 2252(a)(2) and 2252(b)(1). He pleaded guilty to one of the distribution counts and, as part of his Plea Agreement, he agreed to pay restitution.

On March 30, 2021, Carneal was sentenced to 151 months of imprisonment and 20 years of supervised release. But the amount of restitution he would be required to pay was not determined at that time, because one of the twenty-one victims identified before sentencing had only recently come to the government's attention, and she asked for more time to compile her statement and restitution request. The district court was told that the government and Carneal would be "coming back and approaching th[e] Court for restitution," and the court agreed that it would amend the Judgment in accordance with a restitution finding to be determined at a later date.

In February 2022, the government sent Carneal a proposed stipulation regarding restitution. It included $3,000 for each of the twenty-one victims. In August 2022, however, Carneal informed the government he was no longer willing to enter a stipulation as to restitution, so the government filed a motion asking the court to determine restitution.

On March 14, 2023, the district court held a hearing on the government's motion. Carneal asserted that he should not have to pay restitution because, in his view, the government's request was untimely. The court disagreed and ordered Carneal to make restitution in the amount of $63,000, with $3,000 for each victim. Carneal timely appealed the restitution order.

II.

As an initial matter, Carneal concedes that, in his Plea Agreement, he "waive[d] his right to appeal any assessment, forfeiture, or restitution order associated with his sentence." He alleges, however, that the government breached the agreement when it requested restitution too late.

The government breaches a plea agreement when it "'actively advocate[s] for an outcome different from the one it had promised' to seek." United States v. Pierre, 912 F.3d 1137, 1142 (8th Cir. 2019) (quoting United States v. Fowler, 445 F.3d 1035, 1038 (8th Cir. 2006)). Thus, we first must address the issue of breach, because "'[i]f the government breached the plea agreement,' [Carneal] may proceed with his appeal 'despite the appellate waiver.'" Id. at 1142 (quoting United States v. Quebedo, 788 F.3d 768, 775 (8th Cir. 2015)). We review this issue de novo. United States v. Collins, 25 F.4th 1097, 1100 (8th Cir. 2022) ("We review *de novo* questions regarding the interpretation and enforcement of a plea agreement." (citation omitted)).

Carneal's Plea Agreement contained a provision titled Restitution and Disclosure of Assets. In relevant part, the provision said: "Carneal agrees that, if victims are identified and come forward before he is sentenced, the Government may seek mandatory restitution within 60 days of discovering new losses, as provided in 18 U.S.C. § 3664(d)(5)." Carneal interprets this language to mean that the government was required to finalize and seek restitution within 60 days of learning about the twenty-first victim. The time between Carneal's sentencing hearing—by which time all sides were aware of the twenty-first victim—and when the government proposed the stipulations regarding restitution was appreciably more than 60 days. Thus, according to Carneal, the government breached the Plea Agreement by requesting restitution outside this 60-day period.

"We generally interpret the meaning of the terms in [a plea] agreement according to basic principles of contract law." United States v. Thomas, 58 F.4th

964, 971 (8th Cir. 2023) (quoting Collins, 25 F.4th at 1100). "This involves 'discern[ing] the intent of the parties as expressed in the plain language of the agreement when viewed as a whole.'" Id. (alteration in original) (quoting United States v. Lara-Ruiz, 681 F.3d 914, 919 (8th Cir. 2012)). Pursuant to Carneal's Plea Agreement, "if victims are identified and come forward before" Carneal's sentencing, the government was permitted to "seek mandatory restitution within 60 days of discovering new losses." There is no dispute that the victims were identified and had come forward prior to sentencing. The question, then, is whether there were "new losses" that the government was required to seek within 60 days of discovery. The critical term—"new losses"—is not expressly defined in the Plea Agreement. But the Agreement says that the government may seek mandatory restitution within 60 days of discovering new losses "as provided in 18 U.S.C. § 3664(d)(5)." So, looking to the Plea Agreement to determine the parties' intent, see Thomas, 58 F.4th at 971, we are directed to § 3664(d)(5).

Section 3664(d)(5) "permits a belated award of restitution in two circumstances." United States v. Zaic, 744 F.3d 1040, 1042 (8th Cir. 2014). Carneal argues the second is at issue here.[2] It allows that:

_____

[2]The first circumstance is when "the victim's losses are not ascertainable [within] 10 days prior to sentencing, the attorney for the Government . . . shall so inform the court, and the court shall set a date for the final determination of the victim's losses, not to exceed 90 days after sentencing." 18 U.S.C. § 3664(d)(5). Still, a district court has discretion to award restitution after 90 days. Dolan v. United States, 560 U.S. 605, 608 (2010). While "a delay in ordering restitution might . . . prejudice a defendant and threaten his due process rights," Zaic, 744 F.3d at 1043 (citing Dolan, 560 U.S. at 616–17), Carneal does not show how this is the case here. While he makes conclusory references to due process issues related to the alleged breach, the record shows that Carneal had ample notice at sentencing of the number of victims to whom he would be expected to pay restitution, and he did not object to the government's request—or the district court's granting—of additional time to confirm the final restitution amount upon receipt of the last victim's restitution application. See id.

> If [a] victim subsequently *discovers further losses*, the victim shall have 60 days after discovery of those losses in which to petition the court for an amended restitution order. Such order may be granted only upon a showing of good cause for the failure to include such losses in the initial claim for restitutionary relief.

§ 3664(d)(5) (emphasis added). This statutory language clarifies that "new losses" (the term used in the Plea Agreement) means "further losses" (the term used in the statute).

Twenty-one victims were identified and came forward before Carneal was sentenced. Before sentencing, twenty of them submitted restitution requests and documentation to support their losses. Because these victims made no requests for "an amended restitution order," there is no indication that "new" losses—as in, "further" or "other than the former" losses[3]—were "discover[ed]" for any of these victims. As to the twenty-first victim, she came to the government's attention less than ten days before sentencing and requested more time to put together her restitution packet. Her losses, like the other twenty victims' losses, also were not "subsequently discover[ed] further losses," <u>see</u> § 3664(d)(5), and thus not "new." She merely needed more time to put together her request for losses known at the time of sentencing.

---

[3]This understanding of "new losses" also aligns with dictionary definitions of "new." <u>See</u> <u>Thomas</u>, 58 F.4th at 971 (interpreting plea agreement by consulting dictionary); <u>New</u>, <u>Black's Law Dictionary</u> (11th ed. 2019) (observing "new" can mean "recently come into being;" "recently discovered;" or "changed from a former state"); <u>New</u>, <u>Merriam-Webster Online Dictionary</u>, https://www.merriam-webster.com/dictionary/new (last visited Jan. 3, 2024) (observing "new" can mean "having recently come into existence;" "having been seen, used, or known for a short time;" or "being other than the former or old"). Additionally, by conflating "identified" losses with "new" losses, Carneal's interpretation implies that the word "new" in the plea agreement is surplusage. This weighs against his proposed reading. <u>See</u> <u>Brazil v. Auto-Owners Ins. Co.</u>, 3 F.4th 1040, 1043–44 (8th Cir. 2021) (quoting Antonin Scalia & Bryan A. Garner, <u>Reading Law: The Interpretation of Legal Texts</u> 176–77 (2012)).

In sum, when the government asked Carneal to enter a stipulation as to restitution in February 2022, it did not approach him with "new" losses. Rather, the stipulation sought resolution of the victims' original and only "losses." The government did not breach the Plea Agreement.

### III.

Because the government did not breach the Plea Agreement, we turn to the appeal waiver, an issue we review de novo. See Pierre, 912 F.3d at 1143. "When reviewing a purported waiver, we must confirm that the appeal falls within the scope of the waiver and that both the waiver and the plea agreement were entered into knowingly and voluntarily." Id. (quoting United States v. Andis, 333 F.3d 886, 889–90 (8th Cir. 2003) (en banc)). However, "[w]e will not 'enforce an otherwise valid waiver if to do so would result in a miscarriage of justice.'" Id. (quoting Andis, 333 F.3d at 891).

Carneal waived "his right to appeal any . . . restitution order associated with his sentence." His current challenge falls squarely within the scope of this waiver. He does not argue the waiver or Plea Agreement was entered into unknowingly or involuntarily—indeed, he is seeking to enforce the Plea Agreement—and he has not explained how enforcing the appeal waiver would result in a miscarriage of justice. Thus, the Plea Agreement's waiver applies and should be enforced.

Because Carneal's appeal of the restitution order is precluded by the waiver in his Plea Agreement, we dismiss his appeal.[4]

_____

[4]We also strike Carneal's Pro Se Motion for Inclusion, as Carneal is represented by counsel.